THE FIRST NATIONAL BANK OF ST. JOSEPH v. THE TOWNSHIP
OF ST. JOSEPH.

*Township taxes—Temporary secretary of township board—Presumption that
officer had qualified—Warrant for collection—Valuation of property—
Correction of assessments—Assessor's knowledge—Taxation of National
Bank stock.*

An extension of time granted by a township board for the collection of
taxes is not invalidated by the fact that in the absence of the town-
ship clerk, a justice of the peace, summoned to act as a member of
the board, was appointed to act as secretary.

Power to appoint a temporary secretary is incidental to corporate meet-
ings; and if he has been entrusted with all the functions of the office
his record and doings are valid, and they cannot be invalidated by
any presumption that he was not sworn, especially if there was
nothing requiring it to appear that he was sworn.

It cannot be presumed that a *de facto* official has neglected to make any
necessary qualification.

A warrant for the collection of taxes is not fatally defective for being
addressed to the treasurer of the township of ——, if it is properly
signed by a supervisor of a specified township, and is annexed to
its tax-roll.

An objection to the valuation of property as set down on a township tax-
roll, on the ground that the figures indicating the amount are
wrongly divided by a red line so that it is uncertain what it is, in
dollars and cents, is not well taken where it is plain that no attention
had been paid to the line, and that the amounts of taxes were all
properly carried out between the right lines.

If a tax-payer does not have the assessment of his property corrected and
perfected when it is in his power to do so, he must be assumed to
admit its correctness.

A tax assessor cannot be presumed to have personal knowledge of the
private affairs of persons assessed unless they choose to furnish it;
as, of the amount of debts due by the holder of bank stock subject
to taxation.

The power of the State to tax national bank stock is derived entirely
from the Act of Congress permitting it, and the requirement of the
act must be obeyed in good faith. The State tax law is to be con-
strued in connection with the act, in assessing stock.

The Michigan tax law enumerates as taxable property all credits in excess
of the debts of the persons taxed. Comp. Laws § 969. *Held,* that

it is not necessarily in conflict with the provision of the Act of Congress that national bank stock shall not be taxed at a greater rate than other moneyed capital in the hands of individuals (Rev. St. U. S. § 5219) even though the latter are taxed for the full value of their bank stock without deducting their indebtedness.

Error to Berrien.    Submitted June 29.    Decided Oct. 5.

Assumpsit.    Defendant brings error.    Affirmed.

*N. A. Hamilton* for plaintiff in error.    An assessment roll is invalid if ambiguous : *Bird v. Perkins* 33 Mich. 28 ; *Cahoon v. Coe* 52 N. H. 518 ; *State v. Eureka &c. Company* 8 Nev. 15 ; national bank stock can only be taxed by the states where permitted by the national government : *McCulloch v. Maryland* 4 Wheat. 316 ; *Osborn v. Bank of United States* 9 Wheat. 738 ; *Weston v. Charleston* 2 Pet. 449 ; Cooley Const. Lim. 480, 485 ; shareholders in national banks cannot deduct their debts from the valuation of their shares : *People v. Dolan* 36 N. Y. 59 ; *People v. Weaver* 100 U. S. 539 ; *Pollard v. Zuber* 65 Ala. 629 ; *National Exchange Bank v. Hill* 22 Alb. L. J. 451.

*Clapp & Fyfe* for defendant in error.    A State can tax shares held in a national bank : *Van Allen v. Assessors* 3 Wal. 573 ; *National Bank v. Commonwealth* 9 Wal. 354.

Campbell, J.    The township of St. Joseph sued the plaintiff in error for the tax due on shares of William E. Higman for the year 1880, and recovered judgment therefor, which now comes up on error.    The tax is resisted partly for alleged insufficiencies in the proceedings, and partly because it is insisted the tax is invalid entirely.

It is claimed the tax collection was illegally extended.    It appears that there was no township clerk, and that at a meeting of the board one Junius H. Hatch, a justice of the peace, being summoned to be present as a member, was appointed to act as clerk or secretary, and in that capacity made the entries and certified the proceedings of extension.

The township clerk is a member of the board, and when present acts as its clerk.    Comp. L. § 710.    But the law con-

templates that circumstances may exist when he or any other member may be unable to act, or when one of the offices may be vacant. In such case one of the justices of the peace is to be called in, and the board thus constituted has all the powers of the statutory board. Comp. L. § 707.

If the clerk is not present, then some one else must necessarily act in that capacity; because otherwise the clerk might defeat the lawful action of the board by his resignation or absence. The power to appoint a temporary secretary is a necessary incident to corporate meetings, and his record and doings in that capacity must be held valid, if he has been entrusted with the functions, and cannot be invalidated by any presumption of his not being sworn. *Hutchinson v. Pratt* 11 Vt. 402. We have no statute which declares the acts of an officer *de facto* invalid for any such reason. And in *Sibley v. Smith* 2 Mich. 486, it was held that there could be no presumption that an oath required by law, was not taken by an officer, where there is nothing requiring it to appear. Whether we regard Hatch as a regularly appointed clerk to fill a vacancy under § 693 of the Compiled Laws, or as a merely temporary substitute for particular purposes, makes no difference in this regard. We cannot presume that he has failed to make any necessary qualification. The extension of time granted by the board was therefore valid and properly shown. There was positive proof of the book of records, and its authenticity cannot now be questioned.

It is also claimed that the warrant is defective, because not addressed to the treasurer of the township. The warrant is addressed to the treasurer of the township of ————. But it is signed by the supervisor of St. Joseph, and annexed to the tax-roll of that town. The roll, taken together, gives all the means of identification, and cannot be destroyed by this technical omission, which corrects itself.

Objection is also made that the valuation on the roll against this stock is to be regarded as $110 and not as $11,000. This claim is made because there is no dollar-mark opposite the figures 11,000, and they are written in

such a way as to be divided by a red line supposed to indicate the division between dollars and cents.

But no one can look at this roll without seeing that the valuations are made up in even dollars, and that no attention was paid to the ruling. The amounts of taxes are all properly carried out and between the right lines. We do not think this objection well taken.

The principal objection to the tax is that no deduction was made, and it is claimed none is authorized to be made, from the value of the stock, for debts due by the owner, which it is insisted the act of Congress requires to be provided for, before our tax law can be maintained.

The act of Congress, under which the State gets power to levy this tax, declares that State taxation of national bank stock "shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State." Rev. St. § 5219. It is claimed that our tax law violates this rule by not allowing shareholders to deduct the amount of their debts from the value of their stock. And it is claimed that the decision in the case of *People of New York v. Weaver* 100 U. S. 539, is in point to dispose of this case.

We have no doubt of the duty of this State and all its authorities to carry out this rule to the fullest extent. The power to tax at all comes from the act of Congress, and it must be obeyed in thorough good faith. Our statute was passed for the express purpose of conforming to the law as existing in 1869, and as substantially re-enacted by the Revised Statutes of 1872. In our judgment the State law and the act of Congress must be read together, and the State officers must act in harmony with the latter. We think there is nothing to prevent this. While we do not ourselves discover any apparent inconsistency in the rule indicated by our statute, yet even if such inconsistency might appear from a strict interpretation of the language, we think that there can be no difficulty in avoiding it in practice if found—as we think it will not be—to result from a construction of a State law by itself. We do not feel called upon to discuss

the statute at length, because the bank made no attempt to show that Mr. Higman was entitled to make any deduction.

It cannot be presumed that the assessor can have any personal knowledge of the private affairs of persons assessed, unless they choose to furnish it. The statutes provide fully for giving every tax-payer an opportunity to furnish a complete statement of his affairs, showing his property, debts and credits. Comp. L. §§ 980, 981, 982, 983, 984, 985. They also provide for a further opportunity to object to the correctness of the assessment, after it has been drawn up. § 986. If a person does not see fit to have his assessment corrected and perfected, when it is in his power to do so, it must be assumed that a failure to complain is equivalent to an admission of correctness. And this view is intimated in *Williams v. Weaver* 100 U. S. 547.

In the case of *People v. Weaver* the New York assessment was held bad because bank stock was assessed at its full value without reduction, when all other personal property was subject to reduction by debts. Under the taxing laws as before existing there was no exception, apparently, to the rule that if a man's debts exceeded his personalty he was not taxable at all, and was in any event only taxable for the excess over indebtedness. A law was then passed making bank stock taxable without deduction, but leaving other property on its old footing. The United States Supreme Court regarded this legislation as practically putting national banks, which constituted the principal body of banking corporations, at a disadvantage.

Our statutes have put all personal property on the same footing and taxed it equally. No deduction of debts is allowed from such property for taxing purposes, and private and corporate property are dealt with on terms of absolute equality. The only consideration given to debts at all is in reduction of credits. The statute declaring what shall be taxable, after enumerating taxable property of other kinds contains this clause making taxable "all moneys at interest, either within or without this State, due the person to be taxed more than he pays interest for, and all other debts due

;such persons more than their indebtedness." § 969. The remaining clauses relate to all of the ordinary varieties of property, tangible and intangible.

This is a very different case from that in New York. Credits are by no means universally taxed at all, and it could hardly be claimed that there is anything in the act of Congress which would prevent their complete exemption. In some States it has been held they do not come within the constitutional definitions of taxable property. They never can be dealt with to the same extent as other property, because of legal and practical difficulties in subjecting them to reach, or to jurisdiction. See Cooley on Taxation, 15, 65, 134, 270. We cannot perceive any conflict with the act of Congress in applying to national banks the same rules which we apply to all other personal property, merely because in taxing credits we tax the balances and not the whole credits. Our Legislature has put all capital on the same footing, and has made no invidious distinction between banks and other business.

While, therefore, it does not seem to us that any deduction can be required in this State from the value of bank stock, yet we also think that if it should be necessary in order to satisfy the act of Congress, the plaintiffs in error should have made their claim of reduction before the assessment was made absolute, as was done in *People v. Weaver.*

The judgment must be affirmed with costs.

The other Justices concurred.