GEORGE W. BROWN v. MICHAEL QUINLAND AND ETTA QUINLAND.

*Ejectment—Identity of grantor—Idem sonans—Selection of land under Indian treaty—Evidence.*

1. The Indian names "Che-gaw-*ge*-quay" and "Che-gaw-*go*-quay" may be regarded as of the same sound.

2. Where under an Indian treaty the selections of land were in writing, oral testimony of such fact is incompetent, in the absence of a legal excuse for the non-production of the writing or of a certified copy.

3. In an action of ejectment involving the identity of the patentee, a witness, who cannot identify the land in dispute with that he was on when he had a conversation with the occupant as to who selected the latter parcel, cannot testify to such conversation, in the absence of evidence of the identity of the two parcels.

Error to Isabella. (Hart, J.)' Argued January 11, 1889. Decided June 21, 1889.

Ejectment. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*N. O. Griswold* and *M. C. Palmer*, for appellant.

*Fancher & Dodds Bros.*, for defendants.

CHAMPLIN, J. This is an action of ejectment to recover possession of the south-west quarter of the north-east quarter of section 33, township 15 north, range 4 west.

Both parties claim through a patent issued by the United States to an Indian woman by the name of Che-gaw-go-quay, dated May 27, 1871. The plaintiff had possession of this patent, and introduced it in evidence; also a deed purporting to have been executed by Che-gaw-ge-quay to Peter C. and Alexander Andre, dated May 7, 1872, recorded May 16,

1872, and other conveyances by which he claims the title was vested in him.

Some question is made in the brief of defendants that the deed to the Andres was made by Che-gaw-*ge*-quay, and not by the grantee in the patent, the third syllable being spelled " ge " instead of " go." The deed is printed in the record, and while the name of the grantor in the body of the deed is spelled " Che-gaw-go-quay," the signature and the name of the party in the acknowedgment is spelled " Che-gaw-ge-quay." The grantor signed it with her mark, and we think it may be regarded as of the same sound.

The only errors assigned are upon the admission of testimony.

The only disputed fact was the identity of the persons who executed the deeds, as being the grantee named in the patent.

The plaintiff made a *prima facie* case, and rested. The defendants were permitted to introduce testimony tending to show that they obtained title from William N. Brown, John C. Leaton, and Sarah Gruett, and that Brown and Leaton obtained a deed from an Indian woman residing at Sarnia, Ontario, on the twenty-second day of May, 1883, known as " Che-gaw-go-quay," and that, at the time, she was sick and bed-ridden, and died eight days afterwards; that she had been bed-ridden from about the year 1866, and was not in Saginaw county, Michigan, in 1872,—the year and county in which the plaintiff's deed to the Andres purported to be executed; that this Indian woman was a sister of Charles H. Rodd, and that Charles Rodd was an Indian, and was employed for about twelve years as Indian interpreter to the government agent; that he died in 1867; that the first issue of patents for lands to Indians on the Isabella reservation was made in 1871.

A witness introduced in behalf of defendants was permitted to testify that in 1866 he was upon the 40 acres of land in question, and that Charles Rodd was then engaged in making

sugar upon the same. On cross-examination he testified that he was not able to say that the sugar bush was on the south-west quarter of the north-east quarter of section 33, township 15 north, range 4 west, and that he was not able to identify the land as the land above described. He was permitted to testify that he asked Rodd if the land was his, and that he said "No;" he had made that selection for his sister, Che-gaw-go-quay.

The plaintiff's counsel moved to strike this testimony out, but the court overruled the motion. In this he erred. It was in evidence that the selections of land made by the Indians were in writing, but the writing was not produced, and no reason was given for not producing it or a certified copy, if it was material. There was no testimony showing that Che-gaw-go-quay was an orphan child at the time the selection was made, and there was no testimony showing that Charles Rodd had any authority whatever to make selection for his sister. If she was 21 years old, she was entitled to make her own selection. It was provided by treaty that, after selections were made as therein provided, the person entitled might take immediate possession of the land selected, and hold it until the patent should be issued by the United States. 11 U. S. Stat. at Large, 622, 633.

The effect of this testimony was very prejudicial. The object of the question was to show that Charles Rodd had made selection of that land for his sister, and that she was the Che-gaw-go-quay of Sarnia. It was incompetent testimony to prove selection.

If the selection had been proved by competent testimony, then the admissions or declarations of Rodd as to his possession, and the character of it, would perhaps have been competent evidence,—a point not now decided. But the whole testimony of the conversation between witness and Rodd should have been stricken out when the witness testified that he could not identify the land they were on at the time

with the land in dispute, especially as no other testimony
was introduced to show that the sugar bush was upon this
land.

The case was tried upon the theory that the grantor of
the Andres was not the same person as the grantor of Brown
and Leaton; and it is upon that theory that the testimony is
held to have been improperly admitted.  If the grantor in
each deed referred to were the same person, the testimony
would have been immaterial, but its admission would have
been harmless error.

There is testimony in the case which tends strongly to
show that the grantor in both deeds was the same person.
The testimony of the defendants tends to show that Che-
gaw-go-quay was a sister of Charles Rodd; and the testi-
mony introduced by the plaintiff tends to show that she was
a relative of Rodd.   The deed to Brown and Leaton was
obtained by Phillip Gruett, who testifies that in 1879 he was
employed by Brown and Leaton and others to look up defect-
ive titles, and in 1883 Jonas Henry told him that Che-gaw-
go-quay had not sold this land; that previous to that he had
never inquired for her, and had never known her; that he
and Leaton went to Sarnia, and found Che-gaw-go-quay lying
in bed and very helpless; that he told her that here was "a
man that wants to buy your piece of land in Isabella county;"
that she made no answer; that he asked her whether she had
sold that piece of land, and she said she had sold one piece
of land to a white man from Isabella; that he asked her
who the man was, and if she knew Bennett, and she said
she did not know the man by name any more; that he told
her she had 80 acres of land there, and that this man wanted
to buy that 40, and she said she would sell, and he told her
Mr. Leaton offered her $1.50 an acre, and pay $10 down, and
give her a paper stating that she should have the balance
when this title was perfect.   He says the land was worth, in

his judgment, $250 or $300, and he don't remember that he told her what the land was worth.

Under the treaty each head of a family was entitled to select 80 acres of land, and each single person, over 21 years, 40 acres. There was no testimony in the case showing that Che-gaw-go-quay was the head of the family; on the contrary, the presumption arising from the fact that the United States only granted her a patent for 40 acres is that she was not. On what basis Gruett represented to her that she had 80 acres is not disclosed by the record; and, if she had but 40, she plainly told them that she had sold it to a white man from Isabella, from which a strong inference arises that she is the identical Che-gaw-go-quay that conveyed to the Andres.

The court also erred in permitting the witness Gruett to testify to the record made up by the Indian agent, which he had frequently seen and consulted in Arnold's office. It was irrelevant testimony.

The judgment must be reversed, with costs of both courts, and a new trial granted.

MORSE and CAMPBELL, JJ., concurred.

SHERWOOD, C. J. (*dissenting*). I do not take the same view of this case as do my brethren.

The plaintiff brings ejectment to recover the south-west quarter of the north-east quarter of section 33, in township No. 15 north, of range 4 west, claiming to be owner of the title in fee.

The verdict was in favor of the defendants at the circuit, and plaintiff asks review in this Court.

Both parties claim to have obtained their title from the same person, who was the patentee from the United States. The patentee was an Indian woman whose name was spelled in the patent " Che-gaw-go-quay."

The plaintiff claims through a conveyance made May 7, 1872, by an Indian woman, whose name is spelled " Che-gaw-ge-quay," to Peter C. and Alexander Andre, but neither this

woman nor any grantee of hers ever took any possession of the premises.

The defendants' claim of title is based upon a deed executed by Che-gaw-go-quay to William N. Brown and John C. Leaton, dated May 22, 1883, conveying the land in question; and Brown and Leaton conveyed to the defendants, who took possession of the land, and have resided thereon ever since as their homestead. The plaintiff's deeds were all on record when Brown and Leaton made their purchase, and when the defendants purchased; and the only material question in the case was, was the Indian woman who conveyed to the Andres the person to whom the land was patented? If so, then the plaintiff was entitled to recover; if not, then the defendants, being in possession, should have prevailed.

Whether the plaintiff's grantor, Che-gaw-go-quay, was such patentee or not was a question of fact for the jury to pass upon; and, they having done so under a proper charge by the court, the question should be regarded as settled in favor of defendants.

I can discover no error in receiving the testimony, and the judgment should be affirmed.

LONG, J., did not sit.