ENSLEY *v.* COOLBAUGH.

1. TAXATION — ASSESSMENT ROLL — FIGURES WITHOUT DOLLAR
    MARKS.
    Tax assessments being administrative and not judicial proceed-
    ings, the roll is not in the nature of a judgment which would
    be void for failure to indicate by dollar marks or words the
    meaning of the figures.

2. SAME—DUTY OF MORTGAGEE TO PAY TAXES—OBTAINING TITLE
    BY TAX PURCHASE.
    It is not a violation of the mortgagee's duty to the mortgagor,
    to purchase at tax sale premises which have been sold to the
    mortgagee on foreclosure of the mortgage, the duty and the
    relation having ceased to exist.

3. DEEDS—CONVEYANCING—PARTIES—NAME—IDEM SONANS.
    A deed to the correct grantee under the name of Ansley in-
    stead of Ensley, conveys title to the premises.

4. SAME—NAMES—VARIANCE IN SPELLING.
    Proper names, though spelled differently or pronounced with a
    slight variation, are regarded as the same, if they sound sub-
    stantially alike.

5. TAXATION — PURCHASE OF STATE BIDS — PAYMENT OF TAXES
    DUE.
    Failure to pay taxes due which have become a lien on the
    premises, at the time of a tax purchase, avoids a deed from
    the auditor general to the purchaser. 1 Comp. Laws, § 3907.

6. SAME—NOTICE TO REDEEM—SEPARATION OF DESCRIPTIONS AND
    AMOUNTS.
    Notices of the purchase of State tax lands, which do not de-
    scribe the several parcels deeded to the purchaser, and the
    amounts due for each, are fatally defective.

7. EJECTMENT—PRIOR POSSESSION—OUSTER.
    A plaintiff, in ejectment to recover possession of vacant prop-
    erty, claiming a prior possession and ouster by the defend-
    ant, must show actual or constructive possession to the time
    of the wrongful intrusion, and must show that he had not
    abandoned the premises at such time.

Error to Newaygo; Palmer, J. Submitted February 17, 1910. (Docket No. 82.) Decided March 5, 1910.

Ejectment by Ann Janette Ensley against Benjamin Coolbaugh. A judgment for defendant is reviewed by plaintiff on writ of error. Reversed.

*Maher & Barnard,* for appellant.

*George Luton,* for appellee.

STONE, J. This is an action of ejectment in which the plaintiff seeks to recover the two subdivisions constituting the west half of the northwest quarter of section 9, in town 13 north, range 12 west, being in the county of Newaygo. The plaintiff claims ownership in fee under separate deeds from her father, the late William J. Harris. The defendant's claim to the premises is based upon a quitclaim deed from George A. Day, to whom the auditor general made separate deeds of the two forties on February 25, 1903. For convenience of reference the two forties will be designated as the "north forty" and the "south forty," respectively. The cause was tried by the court without a jury, and judgment was rendered in favor of the defendant. Findings were made and filed, and there were certain amendments to the findings. There is some confusion in the record, and it is difficult at times to distinguish the amended findings from the requests to find. Exceptions were filed to the matters of law embodied in the findings, and also to the refusal of the court to make findings of fact upon certain evidence relating to the occupation and improvement of the north forty, the last of which, under our holding, it will not be necessary to consider. A bill of exceptions was settled, error was assigned to the rulings excepted to, and the case is here for review on writ of error.

The lands in question constitute a part of the land grant of the Grand Rapids & Indiana Railway Company, and were conveyed by that company and others to David Kelly

December 28, 1876. His deed was recorded January 8, 1877, and there is no recorded evidence of any conveyance having been made by said Kelly of any part of said lands. Both forties were sold in one parcel for the taxes of 1878, and were conveyed by the auditor general on January 4, 1881, to Henry Ferguson and Hezekiah Sailors. This deed was recorded January 29, 1881. The circuit judge held this deed void for the reason that in the tax roll of 1878 the items of State taxes, county taxes, interest, collection fees, charges, expenses, and amounts sold for are in figures without dollar marks or any word or sign to indicate what the figures mean except that a line appears upon the blanks to the left of the last two figures. This ruling is covered by exception and assignment of error. We think that this ruling constituted error. A tax roll does not operate as a judgment. Tax assessments are administrative and not judicial proceedings, and no record made by an administrative officer concerning his own accounts is operative as a judgment.

The distinction between judgments and administrative proceedings in tax matters has been clearly pointed out in the decisions of this court. Thus in *Millard v. Truax*, 99 Mich. 157 (58 N. W. 70), it is said:

"It is well settled that a judgment is void which is given in figures merely."

While in *Muirhead* v. *Sands*, 111 Mich. 487, 494 (69 N. W. 826, 829), where the dollar marks did not appear in the petition and published notice, but the figures were divided in such a manner as to indicate a place for dollars and cents, and the same were sufficiently designated in the judgment, the court said:

"We held, in the case of *Millard* v. *Truax*, that a judgment entry was insufficient if it failed to show any dollar marks or anything in terms to indicate that money was intended. This rule * * * should not apply to other proceedings in the course of taxation."

In other cases it has been expressly ruled, both before

and since the institution of judicial proceedings for tax sales, that dollar marks or other monetary designations are unnecessary in tax rolls. *Bird* v. *Perkins*, 33 Mich. 28–31; *First Nat. Bank of St. Joseph* v. *Township of St. Joseph*, 46 Mich. 526–528 (9 N. W. 838); *Auditor General* v. *Sparrow*, 116 Mich. 574 (74 N. W. 881).

The said tax deed being therefore valid upon this record, it appears that title to the north forty was conveyed to William Harris as follows: Warranty deed dated October 16, 1882, from Henry Ferguson and wife to Hezekiah Sailors, recorded May 21, 1887. Quitclaim deed, dated May 14, 1887, from Hezekiah Sailors and wife to Charles Nichols, recorded October 15, 1888.

On July 23, 1889, Charles Nichols and wife mortgaged to William J. Harris, recorded September 5, 1889. This mortgage was duly foreclosed by advertisement, and sold by the sheriff, and deeded to William J. Harris on February 3, 1891. It also appears that on August 5, 1893, the auditor general conveyed said north forty to William J. Harris for the taxes of 1889. The circuit judge, in his original findings, held this deed for taxes of 1889 void for the reason that there was no record in the office of the county clerk of any proceedings taken by the auditor general for the sale of said lands. This ruling is covered by exception and assignment of error. In his additional and supplemental findings, however, the circuit judge said:

"The proceedings for this sale were all regular and in accordance with the statute."

And this conclusion was not excepted to by the defendant. We shall not further consider this question, more than to say, in passing, that the plaintiff contends that the records in the county treasurer's office are complete, and show the petition of the auditor general, the order of hearing, and due proof of publication thereof, with a certified copy of the decree, which is in due form.

It is claimed, however, that William J. Harris was precluded from acquiring title to the premises, because he

had been a mortgagee of the same when the taxes accrued. This claim is not supported by the authorities cited. They relate to the conditions where the relations of mortgagor and mortgagee existed at the time of the tax purchase. In the case at bar the relation had ceased before the tax sale.

As already appears, William J. Harris received a sheriff's deed on foreclosure of mortgage February 3, 1891. He purchased the premises at the tax sale May 2, 1892. The right of redemption, under foreclosure, had expired February 2, 1892, three months before the tax sale. The reason for the rule invoked by the authorities cited by defendant's counsel had then ceased to be operative. Mr. Harris then had a right to buy in any outstanding title or claim for the purpose of strengthening his title to the property, in question. William J. Harris being therefore the owner of the north forty, he conveyed the same by warranty deed to the plaintiff by the name of "Ansley," instead of "Ensley," on February 17, 1896. Upon this question of the name of the grantee in the deed, the circuit judge found as follows:

" The plaintiff herein was intended to be named as the grantee in said deed. By reason of the similarity in sound, she was sometimes called and addressed in writing by the name of ' Ansley,' as well as of ' Ensley.' After receiving said deed, she had control of the last above described premises, and leased the same from time to time to tenants, who occupied under her, until the buildings thereon were burned in the fall of 1900, and the plaintiff continued to use and cultivate a portion of said premises in the summer and fall of 1901."

Yet the circuit judge found that this was not a conveyance to the plaintiff because of error in the name. This finding was excepted to, and error is assigned by plaintiff.

We think that there was error in this holding. The law does not regard the spelling of names, so much as their sound. If two names, although spelled differently, sound alike, they are to be regarded as the same. Great latitude is allowed in the spelling and pronunciation of

proper names, and in all legal proceedings, whether civil or criminal, if two names, as commonly pronounced in the English language, are sounded alike, a variance in their spelling is immaterial. Even slight difference in their pronunciation is unimportant. 29 Cyc. pp. 272–274; 21 Am. & Eng. Enc. Law (2d Ed.), pp. 306, 315, 317; *Kinney* v. *Harrett*, 46 Mich. 87 (8 N. W. 708); *Brown* v. *Quinland*, 75 Mich. 289 (42 N. W. 940); *People* v. *Gosch*, 82 Mich. 22 (46 N. W. 101); *City of Detroit* v. *Macier*, 117 Mich. 76 (75 N. W. 285). Many other cases might be cited from our own decisions.

In *Andrews* v. *Dyer*, 81 Me. 104 (16 Atl. 405), a deed naming "Mercy A. Andrews" as grantee was delivered to "Melissa A. Andrews," and it was held a good conveyance to the latter. The court said:

"The only question of law is, whether Melissa, the demandant, must go to the equity side of the court for a correction of the mistake in the name, or whether she can establish her title under the deed as it is, by showing that she is the person to whom it was delivered, and for whom it was intended.

"It is, of course, common learning that parol evidence should not be received to contradict or vary the terms of a written instrument. It is equally well settled, however, that parol evidence must often be received to identify the persons or things named in a writing. We think the question here is one of identification, and not one of meaning or terms.

"The demandant, Melissa, produces the deed. * * * She does not offer to prove that she is the person intended to be the grantee in a deed made out and delivered to another person by mistake. She offers to show, rather, that the name written in her own deed, delivered to her, was intended for a noting or description of herself as grantee, that she is the person referred to by the name of Mercy A. Andrews. Such evidence is clearly admissible, and makes out her title."

So, in *Staak* v. *Sigelkow*, 12 Wis. 234, a deed for "Arnold Staak" named the grantee as "Louis Staak," and was held a good conveyance to Arnold Staak.

We are of opinion that the plaintiff showed a good title to the *north* forty in question.

We reach, however, a different result as to the *south* forty. The plaintiff offered in evidence a deed of the south forty from the auditor general to William J. Harris, dated November 9, 1897, for the taxes of 1893. The land was sold under decree dated September 20, 1895, and was bid in by the State. Harris purchased the State bid, or title, January 9, 1896, but did not pay the taxes of 1895, which were then a lien upon the land. This is shown by reference to the deed itself and by the finding of the court, where it was found that on February 25, 1903, the auditor general made a tax deed to George A. Day of the southwest quarter of northwest quarter of section 9 in town 13 north, range 12 west, for the taxes of 1895, 1896, and 1897. From this it plainly appears that the taxes of 1895 were a lien upon this land on January 9, 1896, when Harris purchased from the State under the provision of Act No. 154 of the Public Acts of 1895 (1 Comp. Laws, § 3907).

In *Hughes* v. *Jordan*, 118 Mich. 27 (76 N. W. 134), it was said, under a similar statute:

" The auditor general has no authority to sell and deed State lands, except upon receiving the price required by law, and this the purchaser is bound to know. The taxes become a lien upon the land early in December—a fact that is known to the auditor general, and of which the purchaser must take notice. Before the auditor general is authorized to part with the title of the State, he must be paid all taxes which remain a lien upon the land. After the time that taxes have become a lien, both purchaser and auditor general are aware that taxes have become payable which have not been returned."

It is not necessary to inquire further concerning this deed. This south forty was deeded by William J. Harris to the plaintiff by a quitclaim deed bearing date April 18, 1896, and the same was recorded August 29, 1896. We thus see that the plaintiff acquired no title to the south forty.

The defendant's claim of title to these premises will be readily disposed of. On February 25, 1903, the auditor general deeded the southwest quarter of the northwest quarter of section 9 to George A. Day for the delinquent taxes of 1895, 1896, and 1897. On the same day the auditor general deeded the northwest quarter of the northwest quarter of section 9 to George A. Day for the delinquent taxes of 1897 and 1898. It clearly appears that the two forties were assessed, taxed, sold, and deeded separately for separate and distinct sums. The tax notice attempted to be served by George A. Day was fatally defective in many particulars, one of which only will be noticed. The notice described the property as a whole, the west half of the northwest quarter of section 9, in town 13 north, range 12 west. It stated that the amount to be paid was $58.55, the gross sum.

As was said by Justice HOOKER in *Jackson* v. *Mason,* 143 Mich. 355, 357 (106 N. W. 1112, 1113):

"Where, however, as in this case, there are various descriptions separately sold, the amount paid for *each* should be given in the notice, failing in which, the notice is not a compliance with law."

See, also, *Duncan Land & Mining Co.* v. *Rusch,* 145 Mich. 1 (108 N. W. 494); *G. F. Sanborn Co.* v. *Johnson,* 148 Mich. 405 (111 N. W. 1091); *Haden* v. *Closser,* 153 Mich. 182 (116 N. W. 1001).

On November 16, 1903, George A. Day deeded by quitclaim to the defendant, who took possession of both forties about May 1, 1904, and has continued to occupy the same. Neither the deed to him nor the deed to Day gave any right to possession of the premises. This suit was begun February 21, 1907.

The plaintiff contends that she was entitled to a judgment for both forties, for the reason that she had been in prior possession of both pieces, claiming title, and that she could rest upon that showing, as a *prima facie* case. The defendant does not discuss that question in his brief. It appears from the finding of the circuit judge that the

plaintiff was not in possession of the premises after 1901. The record is silent as to payment of taxes, or claim of the plaintiff between 1901 and February, 1907, when suit was brought.  One of plaintiff's witnesses testified that the premises had been a kind of commons for some time before the defendant went into possession.  It would seem, therefore, from this record, that there was no actual ouster of the plaintiff by the defendant when he went into possession.  The plaintiff's attorney cites the following Michigan cases in support of his position: *Covert* v. *Morrison*, 49 Mich. 133 (13 N. W. 390); *Cook* v. *Bertram*, 86 Mich. 356 (49 N. W. 42); *Jennings* v. *Dockham*, 99 Mich. 253 (58 N. W. 66); *Gamble* v. *Horr*, 40 Mich. 561; *Shaw* v. *Hill*, 79 Mich. 86, 91 (44 N. W. 422).

As we understand these cases, there was an actual ouster, and the possession was disturbed by the trespass, and we had supposed the rule in Michigan to be that a plaintiff could not recover because of a prior possession unless he shows an actual ouster.  Plaintiff cites *Louisville, etc., R. Co.* v. *Philyaw*, 88 Ala. 264–269 (6 South. 837), which seems to support his position that there need be no actual ouster shown.  The weight of authority seems to be to the effect that, unless plaintiff's right of entry is preserved by constructive possession, his prior possession should be continuous to the ouster, or at least not abandoned; as prior possession may be lost by abandonment.  15 Cyc. p. 35, citing *Spurlock* v. *Dougherty*, 81 Mo. 171; *Pendo* v. *Beakey*, 15 S. Dak. 344 (89 N. W. 655); *Wilson* v. *Palmer*, 18 Tex. 592; *Sabariego* v. *Maverick*, 124 U. S. 261 (8 Sup. Ct. 461); *Pierce* v. *Stuart*, 45 Cal. 280; *Thompson* v. *Burhans*, 79 N. Y. 93; *Taylor* v. *Telle*, 45 La. Ann. 124 (12 South. 118).

In *Sabariego* v. *Maverick*, *supra*, the Supreme Court of the United States, in discussing the question of plaintiff's right to recover on prior possession, says:

"The maxim that the plaintiff must recover on the

strength of his own title, and not on the weakness of the defendant's, is applicable to all actions for the recovery of property."

And that court in its opinion quotes the following language of the supreme court of Texas in *Wilson* v. *Palmer*, 18 Tex. 592:

"The evidence must show a continuous possession, or at least that it was not abandoned, to entitle a plaintiff to recover merely by virtue of such possession."

And it proceeds further as follows:

"That is to say, the defendant's possession is in the first instance presumed to be rightful. To overcome that presumption, the plaintiff, showing no better right by a title regularly deduced, is bound to prove that, being himself in prior possession, he was deprived of it by a wrongful intrusion by the defendant, whose possession, therefore, originated in a trespass. This implies that the prior possession relied on by the plaintiff must have continued until it was lost through a wrongful act of the defendant in dispossessing him. If the plaintiff cannot show an actual possession, and a wrongful dispossession by the defendant, but claims a constructive possession, he must still show the facts amounting to such constructive possession. If the lands, when entered upon by the defendant, were apparently vacant and actually unoccupied, and the plaintiff merely proves an antecedent possession at some prior time, he must go further and show that this actual possession was not abandoned; otherwise he cannot be said to have had even a constructive possession. To the same effect are the cases of *Jackson* v. *Walker*, 7 Cow. (N. Y.) 637; *Jackson* v. *Denn*, 5 Cow. (N. Y.) 200; *Smith* v. *Lorillard*, 10 Johns. (N. Y.) 338."

From this record it appears that the south forty was vacant property for about three years, during which time there is no evidence that the plaintiff paid taxes, or did any act or asserted any claim to indicate that she had not abandoned the premises, or that she had even constructive possession. Upon this record we cannot say that she had any standing in the court that would entitle her to recover as to the south forty.

The plaintiff having shown title to the north forty, she should have been given judgment therefor, under the statute. 3 Comp. Laws, § 10974.

For the errors pointed out, the judgment will be reversed, and a new trial granted.

HOOKER, MOORE, McALVAY, and BROOKE, JJ., concurred.