# CATHARINE PARIS

*v.*

# THOMAS LEWIS.

85  597
173  78

85    597
98a  4146

85    597
114a 4  28

1. PAYMENT OF TAXES—*appointment of agent to pay taxes may be by parol.* An agent for the payment of taxes may be appointed by parol. A request by letter or orally is sufficient to authorize the person requested to act, and a payment of taxes made pursuant to such request would be a payment by the person making the request.

2. SAME—*presumption as to agency of person paying taxes on land of another.* It is not indispensable that an express request to act should be proved, but it may be inferred from circumstances; as, for instance, when the proof shows the payment of taxes by a person not claiming any interest in the land, and his subsequent compensation therefor by the owner, the presumption is the payment was made for the owner, and that the person was his agent in making it.

3. SAME—*abbreviations in tax receipts.* The courts will take notice, without proof, of the meaning of initials usually used in the description of land in tax receipts, such as " W ½ " for " west half," " N W " for " northwest quarter," " T 37 N," for " township thirty-seven north," etc.

4. TAX RECEIPTS—*defective description of land.* Where the description of land in a tax receipt is clearly defective, the objection may be overcome by parol evidence which shows with reasonable certainty that the payment for which the receipt was given was in fact made on the land in controversy.

5. GOOD FAITH. Where a party has paid the taxes on land, to which he has claim and color of title acquired in good faith, for seven successive years, and such title subsequently passes into one who acquires it in bad faith, and afterwards passes to another who acquires it in good faith, and without any notice of the bad faith of the prior owner, such bad faith can not relate back to and affect the title and payment of taxes of the first owner, nor preclude the last owner in good faith from relying upon the title vested in the first owner and transmitted to him, although coming through one claiming in bad faith.

APPEAL from the Superior Court of Cook county; the Hon. SAMUEL M. MOORE, Judge, presiding.

Mr. DANIEL L. SHOREY, for the appellant.

Messrs. McDAID & WILSON, for the appellee.

Mr. CHIEF JUSTICE SCHOLFIELD delivered the opinion of the Court:

Petition was filed by appellee in the court below to establish his title to a certain eighty acres of land in Cook county, under the 10th section of the act in force July 1, 1872, "to remedy the evils consequent upon the destruction of any public record by fire or otherwise." Laws of 1871–2, p. 652. (Rev. Stat. 1874, p. 841.) Answer and petition in the nature of a cross-bill were filed by appellant, setting up title in himself. The court, on hearing, decreed in favor of appellee.

The only question necessary to be considered is the sufficiency of appellee's evidence to establish the payment of taxes for seven successive years, under color of title made in good faith, as required in the second section of the " act to quiet possessions and confirm titles to land," approved March 2, 1839.

It will be assumed that appellant has the better paper title, by reason of appellee's inability to connect himself with the patent title from the United States.

Appellee's evidence of title commences with a certificate from the Receiver of the Government Land Office of Chicago, for $100, in payment for the land in controversy, issued to John W. Noble, August 7, 1836. This was subsequent to the purchase of the land by the remote grantors under whom appellant claims, and is not shown to have been followed by a patent for the land, nor is there any certificate of the register of the land office in evidence, showing that it was entered by Noble. Appellee claims under Noble, through conveyances made as follows: Noble conveyed to Thomas J. Dunkin, Jan. 4, 1837; Dunkin conveyed to Abel T. Edgerton, Albermarle H. Washburn and Wm. Gardner, Sept. 28, 1837; Gardner conveyed to Edgerton and Washburn, July 16, 1838; Washburn conveyed to Edgerton, Jan. 9, 1843; Edgerton conveyed to Edward H. Holbrook, March 9, 1859; Holbrook conveyed to William N. Farwell, March 4, 1863; and Farwell conveyed to appellee, February 1, 1871.

It was, by stipulation, admitted that neither appellant nor any of those under whom she claims is, or at any time has been, in possession of the property; that the property was entirely vacant and unoccupied prior to 1862; and the proof shows that, on the 7th of April, 1863, appellee's immediate grantor, Farwell, took actual possession of the property by a tenant, had the same inclosed, and thus continued in its actual possession until he conveyed to appellee, who has since been in the like actual possession of the property. Appellee's faith in his purchase from Farwell is not assailed. He seems to have paid the full value of the property at the time of his purchase; and, indeed, with the exception of Noble and Farwell, there seems to be no imputation against the good faith, or the regularity of the deeds, of any of the parties through whom appellee deraigns title.

The period to which our attention will be directed, in inquiring whether it has been proved the taxes were paid for any seven successive years, under the title claimed by appellee, commences with the year 1846, when Abel T. Edgerton had the title.

Certain receipts were given in evidence by appellee for the purpose of showing the payment of taxes by Edgerton for the years 1846, 1847, 1848, 1849, 1850, 1851, 1852 and 1853, as well as for other years. The payments purport to have been made by the firms of Ogden & Jones, first, and afterwards Ogden, Jones & Co., as agents for Abel T. Edgerton; and it is objected by appellant that the evidence is insufficient to show that these firms had authority to act as agents for Edgerton in paying taxes upon the property. We have looked through the evidence on this point, as it is preserved in the record, with care, and are satisfied the objection is not well taken. It is not claimed that an agent for the payment of taxes can not be appointed by parol. A request by letter or orally would be sufficient to authorize the person requested to act, and a payment made pursuant to such request would be a payment by the person making the request. And we do not conceive it indispensable that an express request to act should

be proved, but think it may be inferred from circumstances, as, for instance, where the proof shows the payment of taxes by a person not claiming any interest in the land, and his subsequent compensation therefor by the owner, the presumption is the payment was made for the owner, and that the person was his agent in making the payment. It is not required, in this respect, more than in others in civil actions, that the proof shall be positive, or that the circumstances shall be so strong and convincing in their character as to convince to a moral certainty. It is enough if the evidence to that effect sufficiently preponderates to reasonably establish belief.

Edwin T. Sheldon entered the firm as a clerk in 1846. Subsequently he became a partner, and was intimate with the business of both firms—the latter being but a reorganization of the former—throughout the entire period. Franklin Hathaway was book-keeper, cashier and confidential clerk for both firms. His employment commenced in 1847, and continued for many years. Both were very familiar with the tax-paying business of the firm, and usually performed duties immediately connected with it. They swear these taxes were paid for Abel T. Edgerton, and that the respective companies acted as his agents in paying them. It is true, on being interrogated as to the sources of their knowledge, neither has personal knowledge of a contract between Edgerton and the companies, nor are they able to state the time, with accuracy, when any letter was received by either company from him, or the contents of any letter from him. They show, however, that the name of Edgerton was on the books of the companies as a person for whom they were agents in paying taxes on the land in controversy; that the taxes were paid on that hypothesis, and that letters were frequently received from Edgerton in regard to the payment of his taxes.

This, we think, was sufficient until some evidence was introduced to show, either that Edgerton disavowed their agency, or that the taxes were paid on account of some one else. No such evidence was introduced.

Objection is also urged to the receipts, on the ground that they do not describe the land. The description is as follows: "Owner, A. T. Edgerton; division, W. ½ of N. W.; sec. 15; town, 37 N.; range, 13 E.; acres, 80; valuation, $200; tax, $2.04."

Evidence was given by Mr. Wolcott, an old and experienced surveyor of Cook county, who testified that he was familiar with the mode of describing lands, with reference to the congressional surveys, as observed in the public offices in Cook county, and that the description means "west half of northwest quarter of section fifteen, in township thirty-seven north, range thirteen east." We have held, in *Kile* v. *The Town of Yellowhead*, 80 Ill. 208, that we will take notice, without proof, of the meaning of such initials when used in the connection they here occur; but if proof were necessary to explain their meaning, that given was competent and sufficient for that purpose. 2 Phillips on Evidence (Cowen, Hill and Edwards' Notes), 709; 1 Greenleaf's Evidence, § 295.

Aside from this, however, we incline to the opinion that the parol evidence of Sheldon and Hathaway shows, with reasonable certainty, that the receipts were given for payments of taxes—in fact made on the land in controversy; and in that view, even if the description in the receipts were clearly defective, it could avail nothing. *Elston et al.* v. *Kennicott et al.* 46 Ill. 187; ibid. 52; ibid. 272; *Rand* v. *Scofield*, 43 id. 167; *Hinchman* v. *Whetstone*, 23 id. 186.

The attempt to prove payment of taxes during the seven years for which they were paid by Edgerton, by those through whom appellant's title is derived, was unsuccessful. The witness who came nearest to proving such payment, was Hugh T. Dickey. He swears that he paid the taxes while he owned the land. But his ownership did not commence until 1856— three years after the expiration of the seven years during which the taxes were paid by Edgerton. He says, also, that he paid taxes on the land, at different times, for Cotheal, and, he thinks, Baldwin; but he can not give the dates. This may all have

been true, and still none of his payments have been made during the seven years for which Edgerton paid, for it appears that Baldwin obtained a deed to the land in 1840, and the same year mortgaged it to David Cotheal and Henry Cotheal, and that this mortgage was released by Dickey, as their attorney in fact, in 1857. There appears also to have been a conveyance of the property by Baldwin to Alex. J. Cotheal, Jan. 28, 1845. Which of the Cotheals Dickey paid taxes for, is not shown. The taxes may have been paid for the mortgagees, as well as for Alex. J. Cotheal, the subsequent grantee of the property, and since we have proof they were paid for certain years by Edgerton, the presumption is that he paid for other years when Edgerton did not pay.

A final objection urged is, that Farwell did not act in good faith in acquiring title. Without conceding that his conduct is shown to have been censurable, we regard it a complete answer that appellee is not shown to have had notice of Farwell's conduct. Appellee has color of title, acquired in good faith. Edgerton had color of title acquired in good faith, and under it paid the taxes for seven successive years. Farwell's bad faith can neither relate back to and affect Edgerton's title and payment of taxes, nor preclude appellee, a purchaser in good faith without notice of Farwell's bad faith, from relying upon the title vested in Edgerton, and transmitted to him through the several conveyances.

The judgment is affirmed.

*Judgment affirmed.*