## AUDITOR GENERAL *v.* HUTCHINSON.

1. TAXES—COLLECTION BY SALE OF LANDS—IRREGULARITIES.
   Under the curative provision of the tax law of 1893 (Act No. 206, § 99), the fact that a city assessor delivered the original tax roll to the treasurer, instead of a copy, as provided by the charter, and that the treasurer failed to verify his return of uncollected taxes within the specified time, will not defeat a proceeding by the auditor general to enforce the tax by a sale of the land.

2. SAME—PROCEEDINGS OF CITY COUNCIL—PRESUMPTION.
   The courts will not assume that the common council of a city failed to make an estimate of the general expenditures, as required by the charter, before levying the city taxes, because no entry thereof is made upon the records of the council, where there is no express provision requiring such entry to be made.

3. MUNICIPAL CORPORATIONS — SPECIAL MEETING OF COUNCIL — VALIDITY.
   Action taken at a special meeting of a city council is not invalid for want of proof of due notice of the meeting, where it appears from the record of the vote taken that all of the members were present.

4. NEWSPAPERS—NOTICE—SUFFICIENCY OF PUBLICATION.
   A charter provision requiring a notice to be published in each of the public newspapers printed in the city does not include newspapers printed in foreign languages.[1]

---

[1] Some other authorities on the publication of official notices in foreign languages are found in a note to *State* v. *Mayor of Orange*, (N. J.) 14 L. R. A. 64.

Appeal from Muskegon; Russell, J. Submitted April 9, 1897. Decided May 28. 1897.

Petition by Stanley W. Turner, auditor general, for the sale of lands delinquent for taxes. James Hutchinson and others filed objections. There was a decree for contestants, and petitioner appeals. Reversed.

*Fred A. Maynard*, Attorney General, and *H. L. Delano*, City Attorney (*Bunker & Carpenter* of counsel), for petitioner.

*Arthur Jones, Smith, Nims, Hoyt & Erwin*, and *P. W. Niskern*, for contestants.

GRANT, J. This is the usual petition by the auditor general for the sale of delinquent tax lands. The contestants filed 22 objections against the taxes. The assessment was held void and the petition dismissed as to the contestants, for two reasons, namely:

(1) The assessor did not make or cause to be made the assessment rolls and the tax rolls of the city of Muskegon as required by the charter of the city.

(2) The treasurer did not, within the time and in the manner required by the statute and the charter of said city, return the lands to the assessor of said city as delinquent for unpaid city, school, library, one mill, and schoolhouse taxes, and verify such return in the manner provided by law.

The tax involved amounts to about $9,000.

Section 99 of the tax law of 1893 (Act No. 206), under which this assessment was made, is as follows:

" No tax assessed upon any property, or sale therefor, shall be held invalid by any court of this State on account of any irregularity in any assessment, or on account of any assessment or tax roll not having been made or proceeding had within the time required by law, * * * or on account of any other irregularity, informality, or omission, or want of any matter of form or substance in any proceeding that does not prejudice the property rights of the person whose property is taxed; and all proceed-

ings in assessing and levying taxes, and in the sale and conveyance therefor, shall be presumed by all the courts of this State to be legal until the contrary is affirmatively shown."

1. In preparing the assessment and tax rolls, the assessor first listed and valued this taxable property on a single roll, which was submitted to the board of review, and was by that board reviewed and corrected. The assessor then made two copies, which were also submitted to the board of review, and were approved and adopted by the board. On one of these copies he spread the city and school taxes, and attached to it his warrant, and then delivered the roll and warrant to the treasurer, whose duty it was to collect the taxes. In November the treasurer made statements of the uncollected taxes, real and personal, on that roll, and delivered them, with the roll itself, to the assessor. He failed to verify the statements until December, 1894, when he swore to an affidavit, and attached it to the statements. The provisions of the city charter covering the points raised are in sections 6, 10, 11, and 12 of title 10 of the charter (Act No. 304, Local Acts 1889). It is unnecessary to quote them. The defects consist in this:

(1) That the assessor attached his warrant to the original tax roll, and delivered it to the treasurer, instead of delivering a copy, as the charter required.

(2) That the treasurer, in making his return, did not verify his statements of uncollected city and school taxes.

No claim is made, either in the objections filed to the petition, or in the testimony, or in the arguments of counsel, that the taxes are unjust or excessive. Contestants are not before the court offering to bear their just proportion of the public burden. On the contrary, they seek to avoid the payment entirely because officers upon whom is imposed the duty to perform certain acts have not performed them in strict accordance with the requirements of the law. It is too clear to require extended argument that the fact that the collector used the original tax roll

instead of a copy, and the failure to verify a statement at the time required by the law, do not affect the justice of the tax, nor prejudice the property rights of these contestants. If these defects are not covered and cured by the curative statute above cited, it is difficult to note any defect which would be cured by it.

The learned counsel for the petitioner have presented able arguments contrasting the position taken by courts of law and of equity under the earlier tax laws. We have not time to discuss the interesting subject. It is sufficient to say that in cases at law the statutes were, as a rule, so strictly construed that it was generally understood, not only by lawyers, but by laymen, that the presumption was against the validity of a tax title. It is noticeable also that when the original owner filed his bill in equity to remove a cloud from title, or to restrain the sale of his land, the courts acted upon the wholesome maxim, "He who asks equity must do equity," and, as a condition precedent to release, required him to pay his share of the public burden admitted to be just. This principle appears in the following cases: *Merrill* v. *Humphrey*, 24 Mich. 170; *Albany & Boston Min. Co.* v. *Auditor General*, 37 Mich. 391; *Burt* v. *Wadsworth*, 39 Mich. 126; *Connors* v. *City of Detroit*, 41 Mich. 128. Other cases to the same effect might be cited from both this and other courts. Undoubtedly, the legislature, in view of these decisions, intended to confer upon courts of equity jurisdiction to decree a sale of delinquent lands, in which proceeding a taxpayer would be permitted to appear and defend, not upon technical grounds, or upon a mere neglect of official duty which did not affect the justice of the tax or prejudice his property rights, but in which he might appear and defend for defects which were jurisdictional, and which prejudiced him. Under the old law, the prudent and honest men paid their taxes; the careless and dishonest did not. Under that system the prudent and honorable men paid more than their fair share of the public burdens. The present law was aimed

to cure this evil, and should be liberally construed. We are of the opinion that the court was in error in holding that these defects are not cured by the statute. *Hamilton & Merryman Co.* v. *Township of L'Anse*, 107 Mich. 419; *Auditor General* v. *Longyear*, 110 Mich. 223; *Auditor General* v. *Jenkinson*, 90 Mich. 523.

2. It is urged as a fatal defect that the records of the common council do not show that estimates of the general expenditures were made as the charter requires. The only evidence that such estimates were not made is the fact that there was no entry of them upon the records. There is no express provision of the charter requiring such entry to be made. These estimates are usually made by a committee, and courts will not assume that no such estimates were made and included in the annual appropriation budget from the fact that no entry thereof is made upon the record.

3. This action of the council was taken at a special meeting, and there is no record of serving notice upon all the members of the council. The roll call, as appears by the record, discloses one absent member. He was undoubtedly absent from the council chamber when the roll was called, but the record shows that he was present, and voted on the resolution. The objection is therefore without force.

4. The charter requires that notice of the meeting of the board of review shall be given 10 days previous to this meeting by publication in each of the public newspapers printed in the city. A Swedish newspaper was printed in the city, and notice was published in it, but not 10 days prior to the meeting. This provision does not mean newspapers printed in foreign languages. The English language is the recognized language of this country, and whenever the law refers to publication in the newspapers it means those published in the language of the country. In *Graham* v. *King*, 50 Mo. 23 (11 Am. Rep. 401), it was held that, "when notices are to be published in a paper, an English paper is always intended

unless it is expressed to be otherwise." This case was approved in *Schaale* v. *Wasey*, 70 Mich. 419, where notice published in English, but in a newspaper published in a foreign language, was held void. If the legislature desires to provide for publications in foreign languages, it may do so by express enactment. There was, therefore, no necessity for publishing it in this paper. But, if there were, there is no evidence that the contestants in this case were prejudiced in their property rights by this failure.

It is unnecessary to discuss the other objections raised. They are all covered by the statute as above construed.

Decree is reversed, and the case remanded for further proceedings.

The other Justices concurred.