116 574
136 ³ 6

116 574
139 ⁹698
e140 ⁰429

116 574
142 ⁵ 15

116 574
f143 ⁵356

116 574
147 ⁰332
147 ⁰333

## AUDITOR GENERAL *v.* SPARROW.

1. TAXES—EQUALIZATION—PRESUMPTION.

In the absence of a contrary showing, it will be presumed that the equalization of the several assessment rolls of a county by the board of supervisors was based upon the valuation of the real estate, as required by the statute, and not upon that of both the real and personal property.

2. SAME—SUFFICIENCY OF RECORD.

Hence, the statutory requirement that the amount added to or deducted from the valuation of the real estate as assessed be entered upon the records of the board is sufficiently complied with where the record discloses the aggregate valuation of the real and personal property as assessed and as equalized.

3. SAME—CLERICAL ERROR.

The use of the term "taxes," instead of "valuation," in the record of equalization, is not a fatal defect, where it is manifest that the latter term was intended.

4. SAME—ABSENCE OF DOLLAR SIGN.

The absence of the dollar sign in the record of the equalization and apportionment of taxes by a board of supervisors does not invalidate the action taken, where the figures are separated in such manner as to indicate places for dollars and cents.

5. SAME—ASSESSMENT ROLL—DESCRIPTION OF LANDS—SUFFICIENCY.

The description of the several quarters of a quarter section of land in an assessment roll is sufficient to authorize a decree against them for the amount of the tax, where one of the

quarters is identified by the abbreviations "N. E.-N. E." under the heading "Description," and by the appropriate figures under the respective headings "Sec.," "Town," "Range," and "Acres," and the other quarters in their order by the abbreviations "N. W.," "S. W.," and "S. E.," respectively, placed directly under the first abbreviation "N. E." (indicating the particular quarter), and by the figures "40," repeated in each instance under the heading "Acres," although the second abbreviation "N. E." (indicating the quarter section), and the number of the section, town, and range, are not repeated or indicated by ditto marks.

6. SAME—COLLECTION BY SUIT IN CHANCERY—DEFENSES—ABSENCE OF WARRANT—UNVERIFIED RETURN—DEFECTIVE CERTIFICATE OF BOARD OF REVIEW.

Under the method of enforcing the payment of delinquent land taxes by a foreclosure of the lien in chancery, and particularly in view of the curative provisions of the tax law (Act No. 206, Pub. Acts 1893, § 99), irregularities in the prior proceedings which do not prejudice the property rights of the person whose land is taxed will not defeat the claim of the State. Thus, it is no defense to the entry of a decree against the land—

(1) That no warrant was annexed to the tax roll delivered to the collecting officer;

(2) That the return of delinquent taxes was not verified; or

(3) That a majority of the board of review did not sign the certificate attached to the assessment roll.

7. SAME—UNAUTHORIZED ACTION BY BOARD OF REVIEW.

But a change of valuations in a township assessment roll by the board of review, upon its own motion, after the expiration of the time allowed for that purpose by section 29 of the tax law of 1893, invalidates the entire tax.

8. SAME.

And, likewise, the addition of lands to a roll by the board after the expiration of such period invalidates the tax as to the lands so added.

9. TOWNSHIP TAXES—AUTHORITY OF TOWNSHIP BOARD.

Under 3 How. Stat. § 750, authorizing the township board to vote the sum necessary to be raised by tax for the ordinary expenses of the township in case the qualified electors, at the annual township meeting, shall "neglect or refuse" to do so, a tax levied for such purpose is invalid if based upon a vote of the board without a previous submission of the question to the electors.

10. SCHOOL TAXES—AUTHORITY OF BOARD OF EDUCATION.

And taxes levied for school purposes in a township school district are subject to the same consideration, under Act No. 176, Pub. Acts 1891, § 9, conferring like authority upon the board of education of such district with respect to school taxes.

11. HIGHWAY TAXES—POWER OF TOWNSHIP BOARD.

But under 3 How. Stat. § 1356, providing that the township board shall fix the amount to be raised as a money tax for highway purposes in case the electors "do not determine" the same, a previous submission of the question to the electors is not a prerequisite to the authority of the board to act. Distinguishing *Auditor General* v. *Railway Co., ante,* 122.

12. TAXES—AUTHORITY OF BOARD OF REVIEW—INCOMPLETE ROLL.

Under section 29 of the tax law of 1893, providing that the township board of review shall add to the assessment roll the description and value of real property liable to assessment in such township, omitted from the roll, shall correct all errors in the assessment and valuation of property thereon, and shall cause to be done whatever else may be necessary to make the roll comply with the provisions of the act, the board has the power to add the values opposite the descriptions of real property on the roll, where the supervisor has failed to do so.

13. SAME—SUFFICIENCY OF RECORD.

The fact that the record of the board of review of a city fails to show that it met upon a given Monday, to which day an adjournment was taken on the previous Saturday, but shows that it did meet, and adjourn *sine die,* upon the following Tuesday, is not conclusive of the authority of the board, under the charter, to continue its sessions for as many days as might be necessary.

14. CITY TAXES — SPECIAL MEETING OF COUNCIL — NOTICE — EVI-DENCE.

A city tax, voted at a special meeting of the common council at which all of the members were not present, will not be held invalid because the record of the council fails to show that due notice of the meeting was given, where the charter, if it requires proof of notice to be preserved at all, does not require it to be incorporated in the record, and it is not shown that such proof was not properly filed.

15. SCHOOL TAXES—ADJOURNMENT OF ANNUAL MEETING.

School taxes are not void because voted at an adjourned session of the annual school meeting; since, in the absence of statutory provision to the contrary, a regular meeting of a public body may adjourn to a future time.

Appeal from Gogebic; Haire, J.   Submitted October 7, 1897.   Decided April 5, 1898.

In the matter of the petition of the auditor general for the sale of lands delinquent for the taxes of 1894: On objections filed by Edward W. Sparrow and others.   All parties appeal.   Decree modified.

*Charles E. Miller*, Prosecuting Attorney, for petitioner.

*A. B. Eldredge* and *A. E. Miller*, for defendants Frederick F. Ayer and others, trustees.

*M. J. Sherwood*, for other defendants.

HOOKER, J.   Several answers were filed by various landowners in opposition to the proceedings instituted in the circuit court of Gogebic county, under the statute, by the auditor general, for the foreclosure of tax liens and the collection of taxes for the year 1894; and the cause is brought to this court by appeal taken by all parties.

As it is conceded that the tax for county roads is invalid, there is no occasion to discuss that subject.

It is claimed that the entire county tax is invalid, for the want of a proper equalization and apportionment.   The following quotation from the record will show the action taken by the board of supervisors:

"The committee on equalization submitted the following report:

"'*To the Honorable Board of Supervisors:* Your committee to whom was referred the equalization of taxes among the several cities and townships in the county of Gogebic for the year 1894 beg leave to report that the following are taxes of Gogebic county as assessed:

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| City of Ironwood | 5 | 1 | 7 | 7 | 9 | 2 | 0 | 00 |
| City of Bessemer | 1 | 2 | 6 | 2 | 0 | 5 | 5 | 00 |
| Town of Ironwood | | 4 | 3 | 3 | 8 | 0 | 5 | 00 |
| Town of Bessemer | | 4 | 6 | 3 | 1 | 1 | 9 | 00 |
| Town of Wakefield | | 5 | 1 | 2 | 1 | 3 | 0 | 00 |
| Town of Marenisco | | 5 | 7 | 7 | 5 | 5 | 6 | 00 |
| Town of Watersmeet | | 4 | 2 | 0 | 4 | 8 | 0 | 00 |

"'*Resolved*, that the assessment of taxes for the year 1894 for the several townships and cities of Gogebic county be equalized as follows:

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| City of Ironwood | 5 | 0 | 0 | 0 | 0 | 0 | 00 |
| City of Bessemer | 1 | 2 | 6 | 0 | 0 | 0 | 00 |
| Town of Ironwood | | 4 | 3 | 0 | 0 | 0 | 00 |
| Town of Bessemer | | 4 | 6 | 0 | 0 | 0 | 00 |
| Town of Wakefield | | 5 | 0 | 0 | 0 | 0 | 00 |
| Town of Marenisco | | 5 | 7 | 0 | 0 | 0 | 00 |
| Town of Watersmeet | | 4 | 2 | 0 | 0 | 0 | 00 |

"'G. L. LOOPE,
"'SAM. A. REED,
"'W. D. ELSWORTH,
"'K. S. MARKSTRUM,
"'N. B. ROSCORLO,
"'CHAS. TREZONA,
"'JOHN NELSON,
"'Committee.

"Which resolution was adopted; all the supervisors present voting therefor, by yeas and nays, as follows: * * *

"*Q.* I will ask you whether or not anywhere in any of these tables you have just read there appears a dollar sign, or anything that would indicate dollars or cents?

"*A.* No, sir.

"*Q.* Suppose you turn to the apportionment.

"*A.* Yes, sir.

"*Q.* Read it.

"Committee on apportionment report as follows:

"'*To the Honorable Board of Supervisors of Gogebic County:* Your committee on apportionment of taxes beg to report as follows:

"'The amount of State taxes to be levied is 22,422.16, to be apportioned in the several cities and townships as follows:

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| City of Ironwood | 1 | 2, | 9 | 9 | 4 | 08 | | | | | | |
| City of Bessemer | | 3 | 2 | 7 | 0 | 08 | | | | | | |
| Town of Ironwood | | 1 | 1 | 1 | 2 | 00 | | | | | | |
| Town of Bessemer | | 1 | 1 | 9 | 0 | 00 | | | | | | |
| Town of Wakefield | | 1 | 2 | 9 | 4 | 00 | | | | | | |
| Town of Marenisco | | 1 | 4 | 7 | 6 | 00 | | | | | | |
| Town of Watersmeet | | 1 | 0 | 8 | 6 | 00 | 2 | 2 | 4 | 2 | 2 | 16 |

"'Amount of county taxes to be levied is 70,000.00, to be apportioned as follows:

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| City of Ironwood | 4 | 0 | 5 | 1 | 7 | 00 | | | | | |
| City of Bessemer | 1 | 0 | 2 | 2 | 3 | 00 | | | | | |
| Town of Ironwood | | 3 | 4 | 9 | 9 | 00 | | | | | |
| Town of Bessemer | | 3 | 7 | 4 | 2 | 50 | | | | | |
| Town of Wakefield | | 4 | 0 | 6 | 6 | 50 | | | | | |
| Town of Marenisco | | 4 | 6 | 3 | 3 | 50 | | | | | |
| Town of Watersmeet | | 3 | 8 | 1 | 8 | 50 | 7 | 0 | 0 | 0 | 0 | 0 | 00 |

" 'The amount of rejected tax to be levied is 5,038.03.

" 'We recommend that the following tax be spread on the respective rolls of the several cities and townships of the county for local purposes, as follows:   For county road purposes, one-mill tax of the entire valuation of the county, 8,640, to be apportioned as follows:

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| City of Ironwood | 5 | 0 | 0 | 0 | 00 | | | |
| City of Bessemer | 1 | 2 | 6 | 0 | 00 | | | |
| Town of Ironwood | | 4 | 3 | 0 | 00 | | | |
| Town of Bessemer | | 4 | 6 | 0 | 00 | | | |
| Town of Wakefield | | 5 | 0 | 0 | 00 | | | |
| Town of Marenisco | | 5 | 7 | 0 | 00 | | | |
| Town of Watersmeet | | 4 | 2 | 0 | 00 | 8 | 6 | 4 | 0 | 00 |

" 'G. L. LOOPE,
" 'CHAS. TREZONA,
" 'N. B. ROSCORLO,
" 'W. D. ELSWORTH,
" 'JOHN NELSON,
" 'Committee.'

"Upon motion, the report of the committee was accepted, and the several amounts as recommended to be apportioned adopted in accordance with the report; all the supervisors present voting therefor, by yeas and nays, as follows.   *   *   *"

This subject has been discussed in the case of *Auditor General* v. *Ayer*, 109 Mich. 694, where the statute is quoted.   Counsel contend that this statute requires that the record of the board of supervisors show the amount added to or deducted from the valuation of the real estate as assessed, and the aggregate valuation of the taxable real and personal property, etc., and that these things do not appear of record in this case.   In the case of *Auditor General* v. *Ayer*, supra, we held that, if the amount added or deducted is ascertainable by computation, it is sufficient, and that it will be presumed that equalization is

based on the valuation of real estate, if the contrary does not affirmatively appear. This case differs from that in this particular: There the real estate and personal property, as assessed, appeared in separate columns in the record. Here it did not; the aggregates as assessed and equalized were shown. The law does not in terms require either, but the omission to enter one or the other would have made it impossible to ascertain the amounts added or deducted. It is as easy to ascertain these amounts where the valuations of real and personal property as assessed and as equalized are entered in the aggregate as where separately stated, and the presumption is the same.

It is contended, however, that it affirmatively appeared upon the trial, by the testimony of the chairman of the committee on equalization, that the equalization was not based upon real estate alone. If the presumption of regularity can be overthrown by oral testimony in such a case,—a question that we do not pass upon,—the testimony referred to does not, in our opinion, sustain the claim. Dr. Loope, the chairman, was called upon behalf of the State, and upon his direct examination was asked about the report of his committee. The following quotation from the record will show the nature of his examination.

"*Q.* Doctor, I call your attention to this paper marked ' Exhibit N.' Is that your handwriting ?

"*A.* I believe it is; yes.

"*Q.* You know who signed that report ?

"*A.* Yes.

"*Q.* What did your committee equalize ?

"*Mr. Sherwood :* I object to that.

"*Court :* Overruled for the time being.

"*Q.* What did your committee equalize ?

"*A.* Taxable property of the county.

"*Q.* I will ask you if there was any committee to whom was referred the equalization of taxes among the cities and townships ?

"*Mr. Sherwood :* I object to that, as the record is the proper evidence.

"*A.* We have a standing committee on the county board of equalization; that is, one standing committee on the county board.

"*Q.* Now, that committee on equalization: Is its purpose to equalize the valuation of taxes? Does it equalize the valuation of different townships and wards for county purposes?

"*A.* Yes, sir.

"*Q.* Now, when you used the words in your report, 'Resolved, that the assessment of taxes for the year 1894 be equalized as follows,' you meant by that the valuations should be equalized as follows; and now I want to ask you, when that was laid before the board (that is, the report was made there), was the discussion very generally participated in?

"*A.* Yes, sir; that discussion had reference to the equalization of valuation of the different townships and wards of the county.

"*Q.* Now, I will ask you, doctor, taking the first table there, which was the valuation of the city of Ironwood, you see there is no dollar mark there,—517792000. Was that intended to be dollars?

"*A.* Yes, sir.

"*Q.* Were all these figures?

"*A.* Yes, sir; the only discussion before the board at that time upon the report was the relative valuation of the different properties in the cities.

"*Q.* Just the valuations,—the difference in valuations?

"*A.* Yes, sir.

"*Cross-examination, by Mr. Sherwood:* *Q.* Doctor, do I understand that this report was made in ink, or simply a portion of it made in ink?

"*A.* I didn't take notice to it.

"*Q.* Did you put those ciphers here with a pencil?

"*A.* I don't know who put them down.

"*Q.* You notice, doctor, that there is a row of ciphers here, indicating cents?

"*A.* I can't tell whether they were put there by the order of the committee or not. I presume, though, the committee put them there.

"*Q.* Now, doctor, you are not positive whether you made this mark with a lead pencil or not?

"*A.* No, sir; I am not.

"*Q.* Now, doctor, in making this equalization in this report, you took, as I understand, the assessment rolls of

the various townships, and equalized the total valuations of those according to your best judgment?

"*A.* Yes, sir; and made our report in accordance with them.

"*Examined by C. E. Miller: Q.* Now, doctor, around these ciphers made with the pencil there appears to be different styles of handwriting. How would you account for that?

"*A.* I don't know, unless the insertions were made by different members of the committee.

"*Q.* Doctor, the ciphers here made with the pencil are considerably smaller than those made with the pen in ink, are they not?

"*A.* They seem to be, there.

"*Q.* Have you any recollection of this yourself?

"*A.* No, sir; I have no recollection of this report, other than recognizing my own handwriting."

This is substantially his entire testimony. He was not asked to state whether the committee equalized upon a basis of the total valuation of real property, as contradistinguished from the entire aggregate of property upon the roll; and while, upon cross-examination, he answered "Yes" to the question, "Now, doctor, in making this equalization in this report, you took, as I understand, the assessment rolls of the various townships, and equalized the total valuations of those according to your best judgment?" it is not improbable that he had in mind the total of the real property. The record shows nothing to apprise him or counsel that a claim of that kind was then being made. It indicates that he was called to show that the figures referred to valuation, notwithstanding the absence of the dollar sign from the columns, and that the committee equalized valuations, and not "taxes," which is the term used in the report. Technically, the report was inaccurate in this respect, but we think that the intention to equalize valuation was manifest upon the face of the proceedings. The question arising upon the absence of the dollar sign is settled, both as to equalization and apportionment, by the case of *Muirhead* v. *Sands*, 111 Mich. 487. We are of the opinion that the circuit judge com-

mitted no error in sustaining the validity of the county tax other than that assessed for county roads.

Among the taxes questioned are those levied in the various townships. In Marenisco, two defects are pointed out by defendants' brief, viz., that the property was not definitely described, and that no tax warrant was attached to the roll. In Bessemer township, that the descriptions were defective. In Wakefield township, that the descriptions were defective; that the board of review changed valuations after its first meeting, and did not keep a record of the same, as required by section 33 of the tax law. Act No. 206, Pub. Acts 1893. In Ironwood township the descriptions are questioned, and it is said that the supervisor did not complete his roll, inasmuch as he omitted to include his estimate of the values of the respective parcels listed, and it was done by the board of review. In Watersmeet township, lands are said to have been added to the roll after the first meeting of the board of review. In the city of Ironwood, that the taxes were ordered at a special meeting of the common council; that there were changes in valuation by the board of review after the time when such changes might be lawfully made, and that the record of the board was not signed by a majority of the board; that the return of delinquent taxes was not verified; that there was no controller's warrant attached to the roll; and that the school tax was voted at an adjourned session of the annual meeting.

Under the laws of many of the States, including our own, it has been the practice to enforce the payment of delinquent taxes upon land by a sale of a portion or the whole of the land taxed; resulting usually in the sale of the delinquent lands for a small fraction of their value. So obnoxious was this that the courts of these States, with practical unanimity, have refused to sustain these titles unless the proceedings were in all respects regular. The tax laws were intricate, and the many steps required in the assessment, levy, return, advertisement, and sale in-

volved official action of so many persons, and clerical work so great in detail, that it was seldom that the tax proceedings were perfect, and it was for many years the common understanding that tax deeds were uniformly void. As this involved the loss by the tax-title purchaser of the consideration paid for the purchase, the business was attended by risks which discouraged the purchase of lands for delinquent taxes; and ultimately landowners who were nonresidents, or not possessed of personal property from which the taxes could be collected, felt safe in refusing or neglecting to pay taxes. Thousands of acres were stripped of all value, and the taxes, not being paid upon them, had to be reassessed upon the law-abiding and taxpaying portion of the community. Innumerable parcels of land were bid off by the State for want of other bidders, and ultimately had to be sold for a small fraction of the taxes originally levied, leaving large deficiencies, to be met by a new tax. Repeated but futile efforts were made by the legislature to provide a tax law which should be effective, but these efforts were invariably rendered ineffective by the inherent difficulties in the way of absolute accuracy, and the settled policy of the courts to afford every possible protection to the landowner.

The present law is radically different from those which have generally prevailed in this State. It provides for an adjudication upon the validity of the tax before a sale can be made, giving to persons assessed an opportunity to appear and contest the validity of the tax. It is, in substance, a proceeding to foreclose the lien of the State upon the land taxed, which is given by section 40 of the tax law, which provides that taxes assessed upon real property shall become a lien upon such property on the 1st day of December, which lien shall be continued until the taxes are paid. In this proceeding the State may take a decree for the whole tax, or so much thereof as appears to be valid. No good reason appears for denying the

State a decree for a legal tax merely because of some,
irregularity in the earlier proceedings. The fact that
some proceeding has not been seasonably taken, or
that some formal step has been omitted, affords no
reason for allowing a property holder to escape altogether,
and shift his burden upon others. It was manifestly the
intention of the legislature that the court should determine
the just and substantial rights of the taxpayers and the
State, and to cut off technical questions by which the State
and other taxpayers might be defrauded by persons who
seek to avoid their just share of the public burdens.
Thus, the court is given jurisdiction over all lands which
are returned as delinquent, and it is not made a condition
that the earlier proceedings have been regular. The
language of section 60 is that " all lands which have been
or may hereafter be returned * * * as delinquent
* * * shall be subject to disposition, sale, and redemp-
tion *for the enforcement and collection of such tax
liens;"* and care is taken to preserve the lien until pay-
ment. See sections 60, 70. Again, the curative provis-
ion of this law indicates that substance, and not form, is to
be considered, and that the court is expected to sustain the
tax unless it should be made to appear that the tax was il-
legal, or that the irregularity complained of resulted in in-
jury to the rights of property of the contesting taxpayer.
This evident intention should be given effect so far as it is
possible. We will examine these alleged defects, to ascer-
tain which, if any, of them can be said to have rendered
the tax illegal, or prejudiced the property rights of the
taxpayer.

It is claimed that in several of the rolls the land was not
properly described. At the beginning of the roll there was
a printed line, with blanks, which, when filled, made it
read as follows: "Assessment roll for the township of
Bessemer, in the county of Gogebic, for the year 1894."
The pages were ruled, and entries made thereunder as
follows:

| 1 | 2 | 3 | 4 | 5 | 6 | |
|---|---|---|---|---|---|---|
| | | | | | Acres in Each Tract or Parcel. | |
| Name of Owner or Occupant. | Description. | Sec. | Town. | Range. | Acres. | 100ths. |
| Nonresident_____ | N. E.-N. E. | 1 | 45 | 44 | 40 | |
| | N. W. | | | | 40 | |
| M., H. & O. R. R. Co._ | S. W. | | | | 40 | |
| | S. E. | | | | 40 | |
| Nonresident_____ | N. E.-N. W. | | | | 40 | |
| | N. W. | | | | 40 | |
| | S. W. | | | | 40 | |
| M., H. & O. R. R. Co._ | S. E. | | | | 40 | |
| | N. E.-S. W. | | | | 40 | |
| Nonresident_____ | N. W. | | | | 40 | |
| | S. W. | | | | 40 | |
| | S. E. | | | | 40 | |
| | N. E.-S. E. | | | | 40 | |
| | N. W. | | | | 40 | |
| | S. W. | | | | 40 | |
| | S. E. | | | | 40 | |

It is contended that these are not valid descriptions, and counsel cite cases from Minnesota in support of the claim. An examination of the case of *Keith* v. *Hayden*, 26 Minn. 212, will show that it does not cite an adjudicated case, while that of *Power* v. *Bowdle*, 3 N. Dak. 107, merely follows a former decision by the same court, viz., *Power* v. *Larabee*, 2 N. Dak. 141. The opinion in *Power* v. *Larabee* cites *Keith* v. *Hayden*, *supra; Williams* v. *Central Land Co.*, 32 Minn. 440; Black, Tax Titles, § 38; and Cooley, Tax'n (2d Ed.), 404. On examination of these authorities, we find that in none of them is there a decision upon similar descriptions, except the case of *Keith* v. *Hayden*. On the contrary, description by abbreviation was early permitted by our statute (Act No. 96, Laws 1844, § 8), and sustained by this court in the case of *Sibley* v. *Smith*, 2 Mich. 486, 503. For other authorities in point on the subject of abbreviations, see 1 Blackw. Tax Titles, § 246; Black, Tax Titles, § 114; *Jordan Ditching, etc., Ass'n* v. *Wagoner*, 33 Ind. 51; *Atkins* v. *Hinman*, 2 Gilman, 451; *Paris* v. *Lewis*, 85

Ill. 597; *Buck* v. *People*, 78 Ill. 560; *State* v. *Mayor, etc., of Newark*, 36 N. J. Law, 288; *Hodgdon* v. *Burleigh*, 4 Fed. 117. If it be said that the present case is not within these authorities, inasmuch as the fractions are omitted, and in many instances portions of the abbreviations of the descriptions are not expressed, we shall still find authority in the cases cited to support their validity, when we take into consideration the entire roll, and the uniformity in the order in which the respective subdivisions appear. In discussing the question of the requisite accuracy of description, Mr. Justice COOLEY says: "A more satisfactory rule would seem to be that the designation of the land will be sufficient if it afford the means of identification, and do not positively mislead the owner, or be calculated to mislead him." Cooley, 'Tax'n (2d Ed.), 407. See, also, *Tallman* v. *White*, 2 N. Y. 66. In 1 Blackw. Tax Titles, § 223, it is said: "The test is this: Is the description sufficient to identify the land, and give notice to the owner of its assessment, or is it so defective that it might probably mislead the owner?" And "parol evidence will be admitted to aid latent ambiguity."

In this case the columns are indicative of the section, town, and range, and the number of acres, and, in case of residents, the name of the owner. The first description contains the abbreviation: "N. E.-N. E., Sec. 1, town 45, range 44, 40 acres." Below it follow successively other descriptions under the same section, town, and range, which are not repeated. Who can doubt that this was intended to cover land on the same section? And it is just as apparent that "N. E.-N. E." means "northeast of the northeast." That it means "northeast quarter of the northeast quarter" is obvious, not alone from the number of acres, but because all of the other portions of the northeast quarter follow, and, with the first description, complete the number of acres in the quarter section. The northwest and other quarters of the section follow, the subdivisions being set down in the same order, after which section 2 is given

in the same order. It is common knowledge that these terms would be thus understood by the general public, and that this method has been pursued in describing property in this State for many years. No court would hesitate to declare such meaning in an action between private parties, and we see no reason for thinking that it could mislead any one. In *Blakeley* v. *Bestor*, 13 Ill. 713, a description was held good when two sides only of the parcel were described. This was in a tax case. *Hodgdon* v. *Burleigh*, *supra*, discusses descriptions much less certain than the descriptions before us. In *State* v. *Mayor*, etc., *of Newark*, *supra*, the abbreviation "H., L., and Stable" was held good, as evidently meaning "house, lot, and stable." In *Paris* v. *Lewis*, *supra*, the description, "W. ½ of N. W., sec. 15, town 37 N., range 13 E., acres 80," was held good. In *Atkins* v. *Hinman*, *supra*, the town and range were not given with each description, and the court said: "There is no just foundation for this objection. The marks which follow the section clearly refer to the township and range of the two preceding tracts. This reference makes the description complete, and places the matter beyond all dispute." Here there were no dots under the section, town, and range, but it is obvious that all of the land must have been in the same town and range; and the majority of the assessments would have been meaningless unless the descriptions be understood to refer to the quarter and section previously mentioned until a new one was given. We think these descriptions sufficiently certain.

We will next consider the effect of the absence of the warrant from the roll of the township of Marenisco. The law provides that a warrant shall be attached to the copy of the roll which is delivered to the township treasurer. It has frequently been held that without a good and valid warrant the treasurer has no authority to collect a tax, and that he is a trespasser if he seizes property for the purpose of making his tax; and tax deeds have been held invalid when a proper warrant did not accompany the

copy of the roll.   This was upon the theory that it was a
necessary step in the proceedings to a sale, and that it was
a condition precedent to a valid sale.   Under former laws,
all proceedings were ministerial, but under the present law
this is not so.   After the failure of the executive depart-
ment to collect, the enforcement of the payment of delin-
quent land taxes is sought through a different branch of
the government, viz., the judicial branch, by proceedings
conforming to its methods.   The law proceeds upon the
theory of the existence of a claim upon behalf of the State
against the property owner for taxes which have not been
paid, and cites him into court to answer a bill to enforce
this claim against the property taxed.   It is not a suffi-
cient answer for him to show that the treasurer would
have been a trespasser had he seized personal property,
or that he had not demanded payment, or that it might
have been collected had he been diligent or brought
an action,— all of which, perhaps, are permitted, and
possibly directed, by the law.   If all of these things
should be proved, the fact would remain that the tax
was still due and unpaid.   No good reason would seem to
exist why the court should discharge the liability, instead
of requiring payment.   If it did, the practice would be
exceptional.   Everybody is presumed to expect that his
property is taxed, and to know when and where the taxes
are payable, and that, if not paid, they will be returned,
and proceedings taken to obtain a decree requiring pay-
ment, and directing sale of the premises if payment is not
made as required by the decree.   There is no injury to
property by such a course.   The taxpayer has every
opportunity to pay, and a year within which to redeem
after sale.   These provisions of the law are all designed to
protect the landowner from accidental and unexpected
losses of his property through a sale of which he was not
advised, or which he had neglected to provide against;
and it is no hardship to ask payment of a just debt at a
late day, though the entire procedure be not strictly
accurate, and in all respects conformable to law.   Hence

the law requires the taxpayer to set up in his answer wherein the defect lies upon which he depends, and it must be one which the court can see is injurious to his property rights; and it is expressly provided by section 99 that these defects, to discharge the lien, must be something more than irregularities which do not prejudice property rights. The circuit court therefore properly disregarded this objection that there was no warrant, and endeavored to ascertain whether the claim of the State was a just one. See *Auditor General* v. *Hutchinson*, 113 Mich. 245. This disposes of the question raised as to Marenisco. In the same connection, we may say that the absence of the controller's warrant from the copy of the roll in the city of Ironwood is within this ruling.

The questions already discussed leave nothing to be considered in connection with the township of Bessemer, as we discover no additional point commented on in defendants' brief.

The roll for the township of Wakefield was duly certified by the board of review, but the records of the board show that on the 28th and 29th of May they passed resolutions making sweeping alterations in the roll, in the way of reductions; village and mining property being reduced 66⅔ per cent., and other property 10 per cent., upon the basis of the roll of 1893. Just how this affected the roll of 1894 does not appear, as neither roll is included in the printed record; but that it made a sweeping change is asserted by counsel, and not denied, and we therefore feel justified in so treating it. These changes might, perhaps, have been lawfully made a week earlier, when it was the duty of the board to meet; but the law, in express terms, excludes the authority of the board to make changes upon their own motion at a later date. See sections 29, 30, Act No. 206, Pub. Acts 1893, which say, referring to the Tuesday and Wednesday following the third Monday in May, that "if, for any cause, a quorum does not assemble during the days above mentioned, the roll as prepared by the supervisor shall stand as if approved by the board

of review." We are unable to determine what the defendants' properties were valued at in the original roll, or the aggregate valuation of such roll, which we should have to know were we to attempt to ascertain their just proportion of taxes upon their original assessment. It is contended that this is within the curative section 99, which says that "no tax   *   *   *   shall be held invalid *   *   * on account of any assessment or tax roll not having been made or proceeding had within the time required by law." We think, however, that this was clearly prejudicial, and therefore not within the terms of the section mentioned. This rendered invalid all taxes upon the roll of the township of Wakefield.

The point last mentioned is alleged to apply to the township of Watersmeet. The record is, upon its face, correct, but oral testimony was given by an agent of one or more of the parties that, previous to the last meeting of the board, this roll was completed only to the twenty-seventh page. The learned circuit judge held so much of the same valid, and the remainder invalid. This testimony was not disputed, and we do not discover a denial of the fact. We are therefore of the opinion that any assessments against these defendants appearing upon pages following page 27 of the roll were invalid, if there were any such,—a fact that we seem to have no means of determining from the printed record in the case. This will result in the exclusion of all such taxes in this township, except as to defendant Ayer, for whom Ruppe did not appear before the board of review, and who is said to have made no such objection to the tax.

It is also urged that the township, highway, and school taxes of this township are illegal, for the reason that they were voted by the township board and board of education, respectively, and that it does not appear that the electors neglected or refused to vote the same. The record of the board shows that at a meeting of the township board held June 21, 1894, the following resolution was adopted:

" *Whereas*, it appearing to this board that the electors of the township of Watersmeet, at the annual township meeting held in said township on Monday, the second day of April, 1894, failed to vote money for the several funds of said township; therefore,

"*Resolved*, that the sum of one thousand dollars be raised by tax for the contingent expenses of said township for the year 1894."

The township constituted a single school district, under Act No. 176 of the Public Acts of 1891. At a meeting of the board of education held August 20, 1894, the following resolution was adopted:

"*Whereas*, at the annual township meeting held on the second day of April, 1894, the electors hereby failed to vote the amount of tax to be raised for school purposes:

"*Resolved*, that the amount of tax for general school purposes for the ensuing year be $2,500.00."

The highway tax was levied under a resolution adopted by the township board of highway commissioners, reading as follows:

" *Whereas*, it appearing to the township board of highway commissioners of the township of Watersmeet that the electors of said township, at the annual township meeting held on the second day of April, 1894, failed to vote a highway tax in said township; therefore,

" *Resolved*, that a highway tax of one-half of one per cent. be raised on the valuation of all real and personal estate in the said township on the assessment for 1894."

The records of the township were before the court, and it was conceded upon the hearing that there is nothing in the records to show that the electors of the township ever voted any of the taxes that year, with the exception of the town-hall tax, and that they fail to show that the questions were submitted to the electors at the annual meeting.

3 How. Stat § 750, provides:

"Whenever the qualified electors of any township, at the annual township meeting, shall neglect or refuse to vote such sums of money as may be necessary to defray the ordinary township expenses, the township board of any such township is hereby authorized, at any regular

meeting, to vote such sum or sums as may be necessary for that purpose, not exceeding in any one year the sum of one thousand dollars."

Section 9, Act No. 176, Pub. Acts 1891, provides:

" At each annual township meeting held in said township, the qualified electors present shall determine the amount of money to be raised by tax for all school purposes for the ensuing year: *Provided,* that in case the electors at any annual township meeting shall neglect or refuse to determine the amount to be raised as aforesaid, then the board of education shall determine the same at any regular meeting thereof."

The record of the annual meeting must be supposed to show all questions voted upon. It appears that the raising of money for a town hall was submitted, but there is nothing indicating the submission of other questions; and it cannot be presumed that action was taken, when we have the record of the meeting, and it fails to show it. Nor can it be helped by the resolutions, inasmuch as they do not show neglect or refusal, but merely a failure, to vote the taxes, and, under both statutes quoted, the boards are permitted to act only in case of neglect or refusal.

The highway tax was raised under a different act, viz., 3 How. Stat. § 1356, which permits the board to provide for a tax if the annual meeting fails to do so. This section applies to cases where, as in this case, the township has voted a money tax for highway purposes, under sections 1354, 1355, 3 How. Stat.; such cases not being governed by section 1328, 3 How. Stat., which applies to moneys raised for roads and bridges by the highway commissioner. That section was considered in the case of *Auditor General* v. *Railway Co., ante,* 122. We are therefore of the opinion that the latter tax was valid, while the township and school taxes were illegal, in this township of Watersmeet, except the town-hall tax.

The supervisor of the township of Ironwood failed to incorporate in his roll any valuation of property. This

was supplied by the board of review. It was the duty of the supervisor to place such values opposite the descriptions, but the law has provided a remedy if he should fail to do so, by providing that the board of review shall add to the roll "the names of persons, the value of personal property, and the description and value of real property liable to assessment in said township, omitted from such assessment roll; they shall correct all errors in the names of persons, in the descriptions of property upon such roll, and in the assessment and valuation of property thereon; and they shall cause to be done whatever else may be necessary to make said roll comply with the provisions of this act." Act No. 206, Pub. Acts 1893, § 29. As the roll was seasonably completed by the board, we need not consider this question further.

The validity of the tax for the city of Ironwood is attacked upon several grounds,—among them, the changes made by the board of review. The record of the board shows that it met on June 11th, and every day thereafter, up to and including Saturday, when it adjourned to Monday, June 18th. If a meeting was held that day, it is not shown by the record; but it appears that on June 19th the board met and made various changes, and adjourned *sine die*. It is claimed that the roll shows that many changes were made in valuations that are not mentioned in the record of proceedings, and it is also alleged that their certificate is bad, for the want of the signatures of a majority of the council. We have no evidence that the board did not meet on Monday, except the absence of a record for that day; and the absence of such record is not conclusive of their authority to continue their sessions for so many days as were necessary under the charter (section 2, chap. 13, Act No. 235, Local Acts 1893). It does not appear that any of these defendants sought or were denied a hearing before such board, or that the board took any action not authorized by law. The informality in the certificate, if there be any, is within the curative provisions of the tax law. Section 99, Act No. 206, Pub. Acts

1893.  See *Auditor General* v. *Hutchinson*, 113 Mich.
245.

The city taxes were voted at a special meeting.  It is
conceded that the taxes were ordered in due form, but it
is contended that they are void for the reason that the
record of the council does not show that the members were
duly notified of the call for the meeting, inasmuch as it
fails to show that all members were present.  If, under
the charter (Act No. 235, Local Acts 1893, chap. 9, § 1),
it is necessary that proof be made of the summoning of
members of the council, there is no intimation that it must
appear upon the record of the proceedings; and we cannot
presume that proof is not on file, or, if it were shown to be
not on file, that it was not properly filed.  See Act No. 206,
Pub. Acts 1893, § 99.  We are cited to several Michigan
cases supposed to be at variance with this rule, but they
are not.  In *Township Board of Beaver Creek* v. *Has-
tings*, 52 Mich. 528, there was an application for *man-
damus* to compel the clerk to record the proceedings of a
meeting of a township board at which it was not shown
that the same had been duly called and members notified.
It was denied.  But it is not in any sense authority for
the proposition that proof of a valid call and notice must
appear upon the record of the meeting, if held, or that a
presumption of regularity does not arise upon the record
of a special meeting.  In *Harding* v. *Bader*, 75 Mich.
321, it was held that the records of a township must show
that all members were notified or present, to make action
taken at a special meeting to raise money valid.  This
was based upon 1 Dill. Mun. Corp. §§ 262, 263, 286.  This
case was followed in the case of *Auditor General* v. *Mc-
Arthur*, 87 Mich. 457.  But neither of these authorities
limits the proof to the journal of the board, and, in the
absence of proof that they were filed, the presumption,
under section 99 of the tax law, renders the action *prima
facie* valid.  The case of *Newaygo Co. Manfg. Co.* v.
*Echtinaw*, 81 Mich. 416, recognized the presumption of
regularity by presuming that the two justices present were

those whose terms of office would soonest expire; and in the case of *Boyce* v. *Auditor General*, 90 Mich. 324, it was said that the law does not require entry of such proof, and implied that it will not be presumed that proof of notice does not exist. We think the proceedings of the council are *prima facie* valid.

The school taxes are conceded to have been voted at an adjourned session of the annual meeting, held to hear the report of an auditing committee, and for other business. Contestants' brief says that they claim that the purpose of adjournment was not to vote taxes; that the laws covering school districts provide for a date for the annual meeting, at which taxes shall be voted; that there is no provision of law for adjournment of the annual meeting; that the adjournment in this case was taken without authority; and that there was no authority to vote any taxes at such meeting. This statement of claims is unsupported. The only authority cited is 1 Dill. Mun. Corp. § 286, and notes, which we find does not support the contention; but the next section (287) says:

"A regular meeting, unless special provision is made to the contrary, may adjourn to a future fixed day; and at such meeting it will be lawful to transact any business which might have been transacted at the stated meeting, of which it is, indeed, but the continuation."

We have always understood that the annual school meeting is a regular, not a special, meeting. It is fixed by law, and requires no call or notice.

We think that the verification of the delinquent list applied to the whole list, though included in two books, and, were it otherwise, the alleged defect worked no injury to the defendants; and the same is true of the failure of a majority of the board of review to sign the certificate to the roll, if they did not do so.

*Recapitulation:* The county and State taxes are all valid, except in the township of Wakefield, and all lands listed after page 27 in the roll for Watersmeet township. County-road taxes are all invalid. The township taxes in

the townships of Marenisco, Bessemer, and Ironwood are valid. All taxes in Wakefield are illegal. In Watersmeet township, the township and school taxes, except town-hall tax, are illegal, and the highway tax is legal. Our understanding is that, upon behalf of defendant Ayer, only the township, highway, and school taxes in the township of Watersmeet are questioned. The decree of the circuit court will be modified as indicated herein, and, upon the settlement of the decree in this court, the amounts due from the several defendants will be determined, if practicable, from the record, and the rights of defendant Ayer in relation to taxes other than those mentioned will be settled, if the foregoing statement in relation thereto is inaccurate. Defendants will recover costs of this court, and complainant will recover costs of the circuit court.

MONTGOMERY, MOORE, and LONG, JJ., concurred. GRANT, C. J., did not sit.