WALDO AVERY AND CHARLES EDDY v. THE CITY OF EAST
SAGINAW.

*Taxation—Assessment at cash value—Notice of increased assessment.*

The constitutional requirement that property shall be assessed at its cash
value (Const., Art. xiv § 12) is as much designed for securing against
overvaluation as undervaluation.

A tax payer's assessment cannot be raised by a city board of review with-
out such notice to him as will enable him to appear and object to the
valuation on which it rests; if raised without such notice he is only
liable upon the former assessment, and if he pays the whole under
protest he can recover back the excess in an action against the city
therefor.

Case made after judgment from Saginaw. Submitted
October 5. Decided November 10.

ASSUMPSIT. Plaintiffs had judgment. Reversed.

*Wisner & Draper* for plaintiffs. Valuations cannot be
raised without notice to the tax payer: Cooley on Taxation
266–8; *Sioux City Pacific R. R. v. Washington County* 3
Neb. 30; *South Platte Land Company v. Buffalo County*
7 Neb. 253; *Patten v. Green* 13 Cal. 325.

City Attorney *Lawson C. Holden* for defendant. An
assessment may be changed without notice to the tax payer:
*Hambleton v. Dempsey* 20 Ohio 168; if an assessment is
excessive, there can be no recovery except for the excess:
Cooley on Taxation 534 n. *a*; *State v. McClurg* 27 N. J. 253;
*State v. Quaife* 23 N. J. 89; *State v. Kingsland* id. 85.

CAMPBELL, J. Avery & Co., the plaintiffs, recovered
judgment in the circuit court for the county of Saginaw
against the defendant for $453.52 and interest, being city
taxes paid under compulsion and protest as unlawfully
assessed. Judgment was given in their favor for the full
sum claimed. The facts show that plaintiffs, who reside in

East Saginaw, were assessed there in 1879 as partners, for the sum of $6000 as the value of their personal property. When the board of review met, it held sessions for ten days, during which plaintiffs made no complaint or appearance; and on the last day of the meeting the assessment was changed by the board without notice to them, and without any proceeding beyond this: "Supervisor Edsall moved to raise the personal assessment of Avery & Co. from $6000 to $23,000. Carried."

The tax paid was on the assessment as thus raised. The city claim the change was lawfully made.

The assessment of property is required to be made in the first instance in conformity with the general State law, except as to the time of its completion, and the manner of review. When the assessment is completed it is filed with the city clerk, and reported to the council, who appoint the time and place of meeting of the board of review, of which ten days' notice is to be given. Charter, tit. v, § 5.

The assessor, city attorney and supervisors are made such board of review, and are required to meet at least three and not more than ten days. The charter provides that "they shall have power, and it shall be their duty to examine said assessment roll, and correct any errors found therein, and reduce or increase the valuation of any property found on said roll, and to add thereto any taxable property in said city that may have been omitted, and to value the same as provided in the general tax laws of this State." "Any person desiring to do so, may examine his or her assessment on said roll, and may show cause, if any, why the valuation thereof should be changed, and the said board shall decide the same, and their decision shall be final. The concurrence of a majority of said board shall be sufficient to decide any question of altering or correcting any assessment complained of; and the members of the board shall have power to administer oaths and examine witnesses the same as supervisors of townships, as provided by the general laws of the State. The said board shall keep a record of their proceedings, which

shall be signed by a majority of said board, and deposited with the city clerk." Charter, tit. v, § 6.

It is observable that this charter, in order to perfect the assessment, adopts the general law as furnishing the means and analogies of procedure. The Constitution requiring assessments to be at the true cash value, it became necessary, in order to protect tax payers, to have some means provided whereby in case of an overvaluation they might have it corrected. The constitutional provision is as much designed for securing against overvaluation as undervaluation. The general tax law furnishes very full means to the assessing officer for getting at the correct materials for a true assessment, but it also requires him to make an investigation and hear evidence if offered, and the final determination can only be had after such an opportunity has been given. No one has any occasion to make a showing until an *ex parte* finding has been made which he deems wrongful, and no *ex parte* finding is final until there has been such notice given of it as will enable the person assessed to know its amount and attack it if he chooses. Comp. L. § 986. Under the general tax law there can be no change made prejudicial to the tax payer after the roll has been made up for review, and he may therefore rest upon it if not excessive.

The powers of the city board of review are broader in some respects than those of the township assessing officer, because they can enlarge the assessment in some cases. But there is nothing in the charter indicating an intention of allowing this to be done with any less care or responsibility than that required of the original town assessors. The board is to value the property it deals with "as provided in the general tax law of the State." See p. ——. The general tax laws do not allow any change of valuation except on a proper examination, and they allow no valuation to stand, until there has been an opportunity of investigating it on the part of the property owner. The assessment must in the language of the law be "complained of," which signifies at least some distinct reason to be so suggested that it may be examined into in some responsible way. Whatever may be

the presumable familiarity of these officers with the value of specified lands, it is neither presumable nor possible that they can have any such absolute and complete knowledge of the nature or condition or quantity of personal property assessable against citizens, as should preclude any examination to change their estimate, and it is contrary to the whole spirit of our laws, and not in any way compatible with the positive requirement of determining cash value, for any *ex parte* views to determine it finally.   In the present case the change was made without anything further than the motion of a member of the board.   It was made on the last day of the meeting, and in the absence of the plaintiffs below, who had no notice of any attempted change.   It was made without any inquiry on oath or otherwise into the facts in the presence of the parties, and acted upon like any mere matter of business detail on such knowledge as the board supposed they possessed.

As the change when made is final, there must be an opportunity of some kind to complain.   We do not think that this opportunity was given.   It cannot be expected that the entire body of tax payers can attend the sessions of this board constantly, as they would have to do in order to be sure they were not subjected to increased burdens.   While no great formality is possible in providing for doing justice in such cases, some reasonable notice should certainly be given before adding to an assessment.   It is presumable that the assessor's work will not require many changes, particularly in repairing omissions.   Most complaints will be of overassessments, and the persons interested in reducing these are always the moving parties, who will produce their proofs as soon as they find it is necessary.   But additions to the roll when suggested must generally be urged by some one, in or out of the board, who is interested on behalf of the public, or who desires to compel other citizens to bear their share of public burdens. When such a complaint is made, if it has any reason in it, the nature of the supposed deficiency in the existing assessment must necessarily be known at once, so that the inquiry can be very speedily made when once opened.   But unless

the tax payer has some notice of the proposed change he cannot be prepared to make his showing, no matter how unjust the change may be. The general tax law, to the spirit of which this board must conform, requires the opportunity, and there is no other way of getting it.

We think the court below held correctly that the change was unauthorized. But it follows from this that the original assessment should stand, and the tax paid up to that amount was a proper charge which the plaintiffs were equitably bound to pay. They should only recover the excess, which is at this date $351. They are entitled to this sum with costs of the circuit court, but defendant is entitled to costs of this court.

Judgment must therefore be reversed with costs of this court and a new judgment rendered on the finding.

GRAVES and COOLEY, JJ., concurred.

MARSTON, C. J., dissenting. I am unable to concur with my brethren in this case.

The charter of East Saginaw provides for a board of review and specifies the duties thereof, among which is the right to increase the valuation of any property found on said roll. The common council is to appoint the time and place where said board shall meet, and the charter requires that notice thereof " shall be given by the clerk of the common council at least ten days prior to the time of meeting, by publishing a notice thereof in the official newspaper published in said city, and also by posting the same in three public places in each ward of said city." I concede the correctness of the doctrine that no changes can be made by the board without notice to the person against whose interest such change is to be made, and an opportunity given him to show cause why no such change should be made, but in my opinion the general notice given by the clerk is all that is necessary and that no formal or special notice beyond this is required. Any other view it seems to me would but defeat the object of the statute and prevent any increase in the valuation of

property upon the roll, as the owner is not at all likely to personally appear and ask for such increase to be made.

If when the attention of the board is called to the valuation supposed to be too low, either by one of the members thereof or by a third person, the board can take no steps until notice of some kind is given the owner of such property, it must result that in very many cases no change whatever could be made. If a special notice is required, while it may be informal, yet by analogy it must be given the owner or person interested in the property, and a reasonable time and opportunity thereafter must be given him to appear and make his showing. The time within which the board must act and conclude its labors is limited to ten days, and if towards the end of the session, or indeed at any time, special notice must be given an owner, owing to his absence from the city, either intentionally or otherwise, or if from some other cause he cannot be notified, then the board would have no power to proceed farther in the premises.

We cannot assume that many such cases may not arise, or that the board should be required to cause personal notice to be given, while no method is pointed out or means given the board under or by which such notice may be given. I can see but little if any object in giving the general notice required by the charter if in addition thereto special notice must also be given in cases like the present. Under the general notice parties must attend the meetings of the board, as they would the sessions of a court, until their assessment is passed upon, and when once this is done, no change could afterwards be made without special notice, within the case of *Griswold v. Bay City* 24 Mich. 262. This may be an inconvenience to the tax payer, but it is one for the Legislature to remedy. It may be said that the board just before concluding its session may pass upon a large number of cases and thus afford no opportunity to object or show cause. This we cannot assume. We must presume that the board will act in a proper and reasonable manner, and should it appear in a given case that such has not been the fact, the law would afford a remedy.

I am of opinion the judgment should be reversed.