LAKE SHORE & M. S. RY. CO. v. POWERS, Auditor General.

DULUTH, S. S. & A. RY. CO. v. SAME.

(Circuit Court, W. D. Michigan, S. D.     May 19, 1905.)

TAXATION OF RAILROADS—VALIDITY OF ASSESSMENT—MICHIGAN STATUTE.

Pub. Acts Mich. 1901, p. 241, No. 173, § 8, providing for the assessment and taxation of the property of railroad corporations by a state board of assessment, requires such board to prepare an assessment roll by December 15th, and thereafter to meet as a board of review, and continue in session for so long a period as may be necessary, not later than the 15th day of January following, during which time any company or person interested may appear before it and be heard. It further provides that on such application, or on its own motion, the board may correct the assessment of any company in such manner as, in its judg-

138 F.—17

ment, will make the valuation just and equal, and that such valuation shall be the final one on which the tax shall be levied. During such session of the board complainant appeared, and was heard on an application to reduce its assessment. Subsequently the board increased its assessment, and extended the same as required by the statute. *Held* that, in the absence of any requirement therefor in the statute, complainant was not entitled to notice of such action of the board, being given no right to a rehearing, and that the validity of the final assessment was not affected by the failure to give such notice.

In Equity. Suit to enjoin the collection of taxes.

Angell, Boynton, McMillan & Bodman and F. J. Jerome (George C. Greene, of counsel), for Lake Shore & M. S. Ry. Co.

A. E. Miller (A. B. Eldredge, of counsel), for Duluth, S. S. & A. Ry. Co.

Charles A. Blair (Roger Irving Wykes, of counsel), for Auditor General.

WANTY, District Judge. The bills in these cases, besides raising all the questions disposed of in the opinion just filed in the Michigan Railroad Tax Cases, 138 Fed. 223, claim relief from excessive taxes on account of the raising of complainants' assessments by the state board of assessors without notice, and in violation of their rights. The statute (Acts 1901, p. 241, No. 173, § 8) provides that:

"Prior to the fifteenth day of December in each year, it shall be the duty of the board of assessors to prepare an assessment roll as provided in section 4 of this act, upon which they shall assess at the true cash value on the second Monday of April of the year in which the assessment is made all the property of the companies herein enumerated, subject to taxation under this act, which said assessment shall not be final until reviewed as hereinafter provided," and that "on the third Monday of December in each year, it shall be the duty of the state board of assessors to meet at the state capitol at Lansing, and to continue in session from day to day for so long a period as may be necessary, not later than the fifteenth day of January next thereafter, for the purpose of reviewing said assessment roll, and any company or person interested shall have the right to appear during said period and be heard as to the valuation of the property of any company, and said state board of assessors may, on such application or on its own motion, correct the assessment or valuation of the property of such company in such manner as will, in its judgment, make the valuation thereof just and equal; and for the purpose of arriving at the true cash value of the properties assessed on said assessment roll, may subpœna witnesses, as provided in section three of this act and have such hearing as may be deemed necessary. In case it shall appear or be made to appear to the members of said board, acting in review for assessment purposes, that the property of any corporation subject to taxation under the provisions of this act shall have been omitted from said assessment roll, it shall place the same thereon and make the assessment thereof, as required in sections eight and nine of this act. Provided, that any such assessment shall take place in time to allow five full days for the review of the same before the expiration of the time herein provided for the completion of the review. After said state board of assessors shall have completed the review of said rolls, as herein provided, they shall place opposite each description of property in said roll, in a column provided for that purpose, the true cash value of the same as ascertained and determined by them, and such valuation so fixed by them shall be the final valuation upon which the tax upon said property shall be levied and spread as herein provided. After said board shall have completed the review of said roll, a majority thereof shall certify under their hands

officially, and spread on said roll a certificate to the effect that the same has been acted upon and reviewed in accordance with the law, which certificate shall state all the alterations, changes, corrections and additions made in or to the assessment or valuation of the property appearing on said roll."

While the board was in session according to the requirements of the statute, and on January 12, 1903, the representatives of the complainants appeared, and applied for a reduction of their respective assessments. After the hearing, and in the absence of the representatives of the complainants, the assessment of the Lake Shore & Michigan Southern Railway Company was raised $1,020,000, and that of the Duluth, South Shore & Atlantic Railway Company was raised $1,250,000. No notice of this increase was given to the complainants, and they did not know of it until the publication of the assessments on January 16, 1903, after it was too late to make another application for their reduction. The claim of the bills is that, after having fixed, as required by statute, the valuation at certain figures before the review began, and having heard an application to reduce those figures, the board could not later increase them without notice to complainants. It is not suggested that the statute in terms requires this notice, or any special notice, nor that it gives any time during its sessions within which the board may, "on its own motion, correct the assessment or valuation of the property of such company in such manner as will, in its judgment, make the valuation thereof just and equal." It seems to contemplate that at some time between the third Monday of December and the 15th day of January every company interested shall have an opportunity to be heard in regard to its assessment; and that the statutory notice that the board is in session as a board of review is all that is contemplated is made certain by the provision that the property of any corporation subject to taxation under the act which has been omitted from the roll shall be placed thereon, but in time to allow five full days for the review of the same before the final sitting of the board. Unless the company is represented at the sessions of the board, it receives no notice of any changes made in the rolls. Under this statute, according to its terms, every company interested has an opportunity to be heard in regard to its assessment before the board has completed its review; but no company has a right to notice of what the board has done in regard to raising or reducing its assessment, or what it contemplates doing in that regard, either before or after its appearance before the board. The board, after hearing all the companies desiring to be heard on the question of their assessments, may form its judgment, and make all the changes in the roll required by the statute on the last day of its session, except that it cannot add property which has been omitted; and its action then is final. There is nothing in the statute requiring any different notice to companies whose assessments are raised after hearing than to companies whose assessments are raised without a hearing. All have the opportunity to be heard, and after hearing and judgment there is no right to a rehearing.

In Pittsburgh, C., C. & St. L. Ry. Co. v. Backus, 154 U. S. 421, 126, 427, 14 Sup. Ct. 1114, 38 L. Ed. 1031, the United States Su-

preme Court, it seems to us, has answered this contention of the complainants, when, speaking through Justice Brewer, after quoting with approval from State Railroad Tax Cases, that: "This board has its time of sitting fixed by law. Its sessions are not secret. No obstruction exists to the appearance of any one before it to assert a right, or redress a wrong; and in the business of assessing taxes this is all that can be reasonably asked"—it said:

"Again, it is said that the act does not require the state board to grant to the railroad companies any hearing or opportunity to be heard for the correction of errors at any time after the assessments have been agreed upon by the board, and before they are made final and absolute, or before the final adjournment of the board; and also that it gives to the board arbitrary power to deny to plaintiffs any hearing at any time. But the fact and law are both against this contention. The plaintiff did appear before the board, and was heard, by its counsel and through its officers, and the construction placed by the Supreme Court of the state on the act—a construction which is conclusive upon this court—is that the railroad companies are given the right to be present and to be heard. It is urged that the valuation as fixed was not announced until shortly before the adjournment of the board, and that no notice was given of such valuation in time to take any steps for the correction of the errors therein. If by this we are to understand counsel as claiming that there must be notice and a hearing after the determination by the assessing board as well as before, we are unable to concur with that view. A hearing before judgment, with full opportunity to present all the evidence and the arguments which the party deems important, is all that can be adjudged vital. Rehearings, new trials, are not essential to due process of law, either in judicial or administrative proceedings. One hearing, if ample, before judgment, satisfies the demand of the Constitution in this respect. It not infrequently happens in this as in all other courts that decisions are announced and judgments entered on the last day of the term, and too late for the presentation or consideration of any petitions for rehearing or motions for a new trial. Will any one seriously contend that a judgment thus entered is entered in defiance of the requirements of due process of law, and that a party, having been fully heard once upon the merits of his case, is deprived of the constitutional protection because he is not heard a second time?"

The Michigan cases upon which the complainants rely were under statutes differing from the one here under consideration; the facts were also different; and therefore the cases are not controlling. In Avery v. East Saginaw, 44 Mich. 587, 7 N. W. 177, the plaintiff's personal assessment was increased from $6,000 to $23,000 on the last day of the session of the board of review, without any notice to him, or any opportunity to be heard upon the increase. The city charter empowered the board "to correct any errors in the roll, and to reduce or to increase any valuation of property found on the rolls, and to add property omitted." "Any person might show to the board why his valuation should be changed." The court held that the increase spoken of was void, because the charter adopted the general law as furnishing the means and analogies of procedure, and "under the general tax law there can be no change made prejudicial to the taxpayer after the roll has been made up for review, and he may therefore rest upon it, if not excessive." The general law at that time provided for an alteration of an assessment only on "the request of any person, his agent or attorney, considering himself aggrieved, on sufficient cause being shown,"

and is entirely different from the provision of the statute here in question.

In Griswold v. Bay City, 24 Mich. 262, the plaintiff had appeared before the board, and applied to have his assessment reduced. The board reduced it, and then, without notice, it was raised, and the court held that the board had no power to subsequently raise the assessment without notice. In deciding the case Judge Cooley said:

"Their right to review a valuation of property only arises when an application is made for that purpose by the party concerned; and although they sit as a board for three days or more, yet each particular case is heard by itself, and, when once disposed of, the party concerned, who is the moving party therein, is no longer under obligation to watch their proceedings. The public notice which he has under the law to appear and be heard, if he desires to do so, has then, so far as he is concerned, spent its force, and there is no more occasion for his remaining in attendance upon the board afterwards, lest the action taken should be rescinded, than there is for a suitor in court, who has obtained a judgment, remaining constantly with the court so long as it remains in session, lest at some time the judgment should be vacated in his absence and without his knowledge."

The facts in the case of Phillips v. New Buffalo, 64 Mich. 683, 31 N. W. 581, were exactly like those in Griswold v. Bay City.

All that was held in Common Council v. Smith, 99 Mich. 507, 58 N. W. 481, was that the provisions of the general law making it applicable to villages when not inconsistent with their charters, and providing for the addition to the assessment roll by the board of review, during its first meeting, of personal property and real estate omitted from said roll, cannot be invoked to validate the action of the assessor of a village in making such addition of personal property on the last review day, where the charter, unlike the general tax law, does not provide for a second meeting of the board of review.

But, if the complainants were entitled to notice that the board, in its judgment, formed after the hearing, had decided that their assessments should not be reduced, but should be raised, it would be necessary for them to show that the action of the board in raising the assessments was prejudicial, in that the valuation of their property as shown by the assessment roll, after the change had been made, was above its true cash value, before they could obtain relief in a court of equity. This they have not attempted to do in their bills nor in the proof. The rule is that a court of equity cannot enjoin the collection of a tax on the ground that it was assessed without due notice to the complainant, unless it is also made to appear that it is greater than should have been assessed, so that upon a hearing he would have been entitled to a reduction of the amount. This was decided in Mercantile Nat. Bank v. Hubbard (C. C.) 98 Fed. 465–469, where Judge Taft said:

"This proceeding is a bill in equity to enjoin the collection of the tax on the ground that it was assessed without due notice to the complainant. If the tax assessed is no greater than ought to have been assessed, then the complainant is not in a position to ask the intervention of a court of equity, because, however irregular the action of the state board may have been, if the complainant cannot make it clear that by a hearing upon notice it would

have been entitled to an assessment less than that which was made, the bill must be dismissed."

The bills in these cases may, for the reasons set out in the opinion of the court in the Michigan Railroad Tax Cases and in this opinion, be dismissed.