PETOSKEY & BAY SHORE GAS CO. *v.* CITY OF PETOSKEY.

TAXATION—BOARD OF REVIEW—INCREASE OF VALUATION.

> Of its own motion and without a showing of cause or notice to
> the taxpayer, the city board of equalization created by 1
> Comp. Laws, §§ 3322, 3323, may increase the valuation of any
> property assessed in its jurisdiction.

Error to Emmet; Shepherd, J. Submitted June 22, 1910. ( Docket No. 128.) Decided July 14, 1910. Rehearing denied December 8, 1910.

Assumpsit by the Petoskey & Bay Shore Gas Company against the city of Petoskey for taxes paid under protest. A judgment for defendant on a verdict directed by the court is reviewed by plaintiff on writ of error.   Affirmed.

*Henry T. Heald,* for appellant.

*B. H. Halstead,* for appellee.

STONE, J.   The plaintiff is a corporation organized and existing under the laws of Michigan, owning and operating a gas plant in the city of Petoskey.   The defendant is a municipal corporation organized under the laws of this State for the incorporation of cities of the fourth class.

This action was brought to recover for certain taxes paid under protest.   The declaration consists of a special count in assumpsit, and the common counts.   At the trial and after an opening statement made by plaintiff's attorney, and as soon as the first witness for the plaintiff was sworn, the defendant's counsel objected to the introduction of any evidence under the special count for the following reasons:

*First.* The protest set forth, which is the foundation of the claim of the plaintiff, does not show an illegal assessment.

*Second.* At the time this action was commenced the council of the city of Petoskey had neither rejected the claim of the plaintiff, nor had it had a reasonable opportunity to investigate and pass upon it.

In his opening statement to the jury counsel for plaintiff said:

"As you probably know, the city of Petoskey operates under what is known as the law governing cities of the fourth class. The taxes are assessed by the city assessor; they are returned by the city assessor to the board of review and equalization, on the third Monday in May, which, in 1909, was the 17th of May. The city assessor in 1909 assessed the personal property of the gas company at the sum of $27,000. This assessment was returned to the board of review and equalization at that sum. On the day when the board of review and equalization was to hold its first meeting, Mr. Wells, who is the manager of the gas company, came here to the city hall to discover what the assessment against the property of the company was. I think he came here a few minutes before the board of review and equalization were actually in session; but he did see the city assessor, and either the city assessor told him, or else he saw on the books, that the assessment against the personal property was placed at $27,000. That was the same amount at which it had been assessed the year previous, and the company found no complaint with that assessment. Prior to this time, of course, the board of review had published its notice of meeting in the paper, as required by law. Being satisfied with the assessment at that sum, he did not think it necessary to appear before the board of review further, and did not appear before the board of review. The board of review continued its sessions from the 17th day of May to the 24th day of May. On the 22d day of May, which was Saturday, the board, on motion of one of its members, raised the assessment of the company from $27,000 to $42,000—a raise of $15,000. Neither Mr. Wells, nor any other person for the company, was given any notice that this raise was contemplated by the board; and so far as we know, there were no investigations made as to the value of the personal property. The company had no knowledge whatsoever that this raise had been made, and supposed that the assessment still remained at the sum of $27,000 until on or about the 6th of December, 1909, when

Mr. Wells went to the city treasurer's office to ascertain the amount of taxes that the company would be called upon to pay this year, and there, for the first time, learned that the assessment had been raised to the sum of $42,-000. Of course it was too late to consider the question with the board of review at that time, so the company, on January 6, 1910, within the time limited, paid these taxes on its personal property, under protest."

During the discussion of the matter, the attorney for the plaintiff further stated:

"I understand that he (Mr. Wells) came up the first day they were to be in session, and was informed that the assessor was upstairs, and he came up and found the assessor, but the board of review had not been called."

The court sustained the objections of the defendant, and directed a verdict and judgment for defendant. The ruling was excepted to by plaintiff, and the questions are properly raised by assignments of error.

It is the contention of the defendant that the law, applicable in this case, permits the raising of an assessment by the board of review, without other than the published notice, and that the assessment here was legal. We shall first consider this question, for if it shall turn out that the tax was legally assessed, the plaintiff has no standing in court, and the conclusion reached by the circuit judge was correct. Sections 3322 and 3323, 1 Comp. Laws, are controlling here. We quote section 3322 in full, viz.:

"The supervisors of the several wards, the mayor, and the city attorney, shall constitute a board of equalization and review of the general assessment rolls of the several wards of said city, a majority of whom shall constitute a quorum for the transaction of business, but a less number may adjourn from day to day. They shall have power, and it shall be their duty, to examine said assessment rolls, and they shall have authority to, and shall, correct any errors or deficiencies found therein, either as to the names, valuations or descriptions; and of their own motion or on cause shown, may reduce or increase the valuation of any property found on said rolls, and to add thereto any taxable property in said city that may have

162 MICH.—29.

been omitted, and to value the same; and to strike from said rolls any property wrongfully thereon, and generally to perfect said rolls in any respect by said board deemed necessary and proper, for which services such members of said board shall receive two dollars per day while actually employed. If on such examination they shall deem the valuation of the several wards to be relatively unequal, they shall equalize the same by adding to or deducting from the total valuation of the taxable property in any ward such an amount as, in their judgment, will produce relatively an equal and uniform valuation of the real estate in the city; and the amount added to or deducted from the total valuation in any such ward shall be so stated in the certificate attached to the assessment roll of such ward; and all taxes for State, county, school, general city, and sewer purposes shall be apportioned according to said equalization, in the manner hereinbefore provided, and said equalization shall not be changed with regard to the relative valuation of the several wards of said city, and the board of supervisors of the county in which said city is located shall equalize such city as a unit the same as a township is equalized, and any amount added to or deducted from the total valuation of such city as a unit, shall be apportioned by the clerk of the board of supervisors among the several wards according to the equalized valuation of the real property in each ward as fixed by the city board of review."

The next section provides that the board shall meet on the third Monday in May after notice of the meeting by the city clerk; at which time and place the several supervisors shall submit to said board their respective general assessment rolls. It provides for the organization of the board and that they shall continue in session at least four days successively, and as much longer as may be necessary to complete the review, and that any person or persons desiring to do so, may examine his, her or their assessment on said rolls, and may show cause, if any exists, why the valuation thereof should be changed, and that the said board shall decide the same and their decision shall be final. They may examine on oath any person touching the matter of his or her assessment, and keep a record of their proceedings, and all changes made in the

rolls.   The amount added to or deducted from the total valuation in each ward shall be entered upon such record, which record shall be deposited with the city clerk, who shall be clerk of the board.   Said board shall have the same powers, and perform the same duties in all respects, as boards of review of townships, in reviewing and correcting assessments made by the supervisors of townships, *except* as in the act otherwise provided.   It is worthy of note, that unlike boards of review in townships, this board holds but one session or meeting, to wit, the one commencing on the third Monday of May.

We think that there can be no doubt of the power of this board to raise valuations of property, of their own motion.   They have—

"Authority to, and shall, correct any errors or deficiencies found therein, either as to names, *valuations*, or descriptions; *and of their own motion*, or on cause shown, may reduce or increase the valuation of any property found on said rolls, and to add thereto any taxable property in said city that may have been omitted, and to value the same."

This statute makes no provision for any notice other than the general notice which the statute gives, and that given by the clerk generally.

In 1 Cooley on Taxation (3d Ed.), at pages 778 and 779, that author says:

"Sometimes the board has not jurisdiction to change the valuation except upon complaint or application; but frequently the board has power to make alterations of its own motion."

These are clearly proper matters for statutory regulation. The eminent author last quoted says, at page 782:

"Where a statutory board of review holds stated meetings, with power to increase assessments, everybody is notified of the fact, and is warned to attend if he deems it important; and it is often held that under such circumstances special notice of the raising of a particular assessment, or of the adding of omitted property, need not be given."

The author cites cases in United States Supreme Court, in Arkansas, California, Illinois, Indiana, Missouri, New York, Oregon, Tennessee, and Michigan.

In *Detroit Citizens' St. Ry. Co.* v. *Common Council of Detroit*, 125 Mich. 673 (85 N. W. 96, 86 N. W. 809, 84 Am. St. Rep. 589), it was decided that the common council, sitting as a board of review, was not required to notify appellant to attend when it was considering appeals from the board of assessors, and that, if appellant desired to be heard it should have been present and requested it.

In *Township of Caledonia* v. *Rose*, 94 Mich. 216 (53 N. W. 927), it was held that a taxpayer who fails to appear at the time and place provided for the board's sessions is estopped from attacking the assessment.

It was said in *Hinds* v. *Township of Belvidere*, 107 Mich. 664 (65 N. W. 544), that a taxpayer must be presumed to know the powers and duties of the board of review, and the time fixed by statute for its meeting, and that he cannot excuse his failure to appear before that body by showing that he was out of the State at the time.

In *Michigan Savings Bank* v. *City of Detroit*, 107 Mich. 246 (65 N. W. 101), it was held that boards of review are the proper tribunals for the correction of unjust assessments, and that parties will not be heard in the courts, until they have exhausted their remedy before these tribunals. See, also, *First Nat. Bank of St. Joseph* v. *Township of St. Joseph*, 46 Mich. 526 (9 N. W. 838); *Williams* v. *City of Saginaw*, 51 Mich. 120 (16 N. W. 260); *Comstock* v. *City of Grand Rapids*, 54 Mich. 641 (20 N. W. 623); *Peninsula Iron & Lumber Co.* v. *Township of Crystal Falls*, 60 Mich. 510 (27 N. W. 666); *Detroit River Sav. Bank* v. *City of Detroit*, 114 Mich. 81 (72 N. W. 14); *Traverse Beach Ass'n* v. *Township of Elmwood*, 142 Mich. 78 (105 N. W. 30), 142 Mich. 297 (105 N. W. 768). Many more cases might be cited to the same effect.

The plaintiff relies upon the case of *Avery* v. *City of East Saginaw*, 44 Mich. 587 (7 N. W. 177). That case

involved a tax levy under the charter of that city. We have taken some pains to find and examine the charter provisions under which that proceeding was had. Act No. 246 (Laws 1859, tit. 5, §§ 5, 6) is as follows:

"The supervisors of said city shall complete their assessment of all taxable property in said city within such time as is or may be prescribed for the supervisors or assessors of townships by the general law of this State, and upon the completion thereof shall file a notice thereof with the city clerk, who shall report the same to the council at their next meeting.

"SEC. 6. The supervisors, comptroller, treasurer, and city attorney shall constitute a board of review, four of whom shall constitute a quorum. They shall have power and it shall be their duty to examine said assessment and correct any errors found therein, and on *cause shown* to reduce, equalize, or increase the valuation of any property found on said roll, and to add thereto any taxable property in said city that may have been omitted, and to value the same. They shall meet at such time and place as shall be appointed by the common council, of which time and place notice shall be given by said council at least two weeks prior to the time of meeting, by publishing a notice thereof in some newspaper published in said city, and also by posting the same in three public places in each ward of said city, and shall continue in session at least three days successively, and as much longer as may be necessary, at least six hours in each day during said three days; and any person desiring so to do may examine his or her assessment on said roll, *and may show cause*, if any, why the valuation thereof should be changed, and the said board shall decide upon the same, and their decision shall be final; and the said board shall keep a record of their proceedings and all changes made by them in said roll, and their record shall be deposited with the city clerk."

The general tax law referred to by Justice CAMPBELL in the *Avery Case*, being section 986 of the Compiled Laws of 1871, made the supervisor the reviewing officer, and provided that:

"On the request of any person, his agent or attorney, considering himself aggrieved, on *sufficient cause* being

shown, to the satisfaction of the supervisor, he shall alter the assessment as to the valuation thereof and he shall also, upon sufficient cause being shown by any credible person on behalf of any other person whose property is assessed, alter the assessment in such manner as shall to him appear just and equal; and to this end he may in either case examine, on oath, the person making the application, or any other person present, touching the matter, which oath the supervisor is hereby authorized to administer."

As said by Justice CAMPBELL on page 589:

"The powers of the city board of review are broader in some respects than those of the township assessing officer, because they can enlarge the assessment in some cases. But there is nothing in the charter indicating an intention of allowing this to be done with any less care or responsibility than that required of the original town assessors. The board is to value the property it deals with 'as provided in the general tax law of the State.' The general tax laws do not allow any change of valuation except on a proper examination, and they allow no valuation to stand, until there has been an opportunity of investigating it on the part of the property owner. The assessment must in the language of the law be 'complained of,' which signifies at least some distinct reason to be so suggested that it may be examined into in some responsible way."

The difference between the provisions of the statute in that case, when compared with the charter provisions we are dealing with, is very striking. In the *Avery Case* neither the charter nor the general statute gave the power to change an assessment except on *cause shown*. Neither officers nor board could increase an assessment upon their own motion or initiative, as is the case here. They had not the almost plenary power to deal with the assessment possessed by the board in the case we are considering. The time of the meeting of the board even was not fixed by the statute, as is here the case. We must agree with counsel for the defendant that the *Avery Case* arose under statutes so different from those now in question, that it can in no sense be said to be controlling. In fact we

think that the case is readily distinguished.   The dissenting opinion of Justice Marston in that case would probably have been the majority opinion, had the statutes then under consideration been as we find them in this case.

Counsel for plaintiff cites the following cases: *Griswold v. School District*, 24 Mich. 262; *Woodman v. Auditor General*, 52 Mich. 28 (17 N. W. 227); *Phillips v. Township of New Buffalo*, 64 Mich. 684 (31 N. W. 581); *Monroe Water Co. v. Township of Frenchtown*, 98 Mich. 431 (57 N. W. 268); *Common Council of Three Rivers v. Smith*, 99 Mich. 507 (58 N. W. 481); *Auditor General v. Sessions*, 100 Mich. 343 (58 N. W. 1014); *Auditor General v. Sparrow*, 116 Mich. 574 (74 N. W. 881).

In *Griswold v. School District* the charter of Bay City was under consideration, and it was held that the power conferred upon the board of review could only be exercised on the application of a party concerned, and when upon such application they have acted, and reduced a valuation, they could not change it without notice. There was no power in the board under that charter to change a valuation of their own motion, and certainly when they had once acted upon the party's application they could not alter the determination without notice.   In *Phillips v. Township of New Buffalo*, the doctrine of the last-cited case was applied, when the board had acted on application.   We do not think that the case of *Monroe Water Co. v. Township of Frenchtown* applies here. The plaintiff knew that there was a personal tax assessment in the case at bar.   In *Common Council of Three Rivers v. Smith* it was held that the right to a hearing was one, that the taxpayer could not be deprived of. There the entire assessment of personal property was first entered on the last day of the meeting.   Until that time there was no assessment; and it was held that there was no waiver, and the action was without authority under the charter.   In the other two cases cited, it may be said to be assumed without question that assessments may be

raised by boards of review under the general tax law, or under a charter giving that right without notice, at a proper time, but it cannot be done after the time limited. In the *Sparrow Case*, where the general tax law applied, it was held that sweeping changes could not be made at the *last* meeting, on the board's own motion, and the statute is cited. In the *Sessions Case* that right was only given during the first five days, by charter, and increase made after the five days was held void, as it clearly should have been.

We are of opinion that none of the cases cited can be held to support the contention of plaintiff, that the assessment here made and tax here levied were illegal. The charter in question provides for but one session, or meeting, unlike the general tax law. The plaintiff did not appear before the board. That body, of its own motion, had the authority to increase this assessment, and the plaintiff should be held to be estopped to complain of the action taken. Having reached the conclusion that, upon this record, the tax levy appears to have been legal, it is unnecessary to consider the other questions.

The circuit judge reached a correct conclusion, and the judgment below will be affirmed.

BIRD, C. J., and OSTRANDER, HOOKER, and BLAIR, JJ., concurred.