AUDITOR GENERAL *v.* STONE.

1. TAXATION—BOARD OF REVIEW—SESSIONS.

It is provided by 1 Comp. Laws, §§ 3852, 3853 (1 Comp. Laws 1915, §§ 4023, 4024), as amended by Act No. 326, Pub. Acts 1907, that the board of review shall hold two sessions, at the first of which it may of its own motion or upon cause shown, correct all errors as to valuation upon the assessment roll as submitted to them by the supervisor and enter upon the roll at that time the valuation as fixed and determined by it; the second meeting to begin on the second Monday in June and continue during that and the following day. Defendant's agent called on the supervisors and examined the roll between the dates of the two meetings, but found no changes in valuation or assessment on the roll. He did not discover that an attempt had been made on the record of the board of supervisors to increase the assessment. There was evidence that such change had been made at the first session and

noted in pencil on the assessment roll: also, that the agent did not examine it as he claimed to have done. The lower court found that the agent examined the roll, which contained no change in valuation and that the determination had been entered on the record of the meeting of the board at its first meeting. *Held*, that the taxpayers were justified in relying on the assessment roll and not appearing at the second meeting of the board: also, *held*, that they were misled by the failure to enter the changes on the roll and to follow the provisions of the statute.

2. SAME—DOING EQUITY.

As a condition of relief the defendants are required to pay the taxes that would have been properly assessed against the lower or original valuation, and the decree of the court is modified accordingly.

Appeal from Ontonagon; Cooper, J. Submitted June 17, 1915. (Docket No. 66.) Decided January 3, 1916.

Petition of Oramel B. Fuller, auditor general, for the sale of lands delinquent for taxes: On objections filed by Galen Stone and others. From a decree for petitioner, defendants appeal. Modified and affirmed.

*John Jones*, Prosecuting Attorney for Ontonagon county, for petitioner.

*M. J. Sherwood*, for defendants.

PERSON, J. The defendants are owners of the east fractional half of section 4 in the township of Greeland, Ontonagon county, and contest the auditor general's petition for a decree against said land for the taxes of 1911. The land was assessed that year by the supervisor at $20,000, and this assessment was increased by the board of review to $50,000. The contest grows out of this increase in valuation made by the board of review. It is charged by defendants that this increase was excessive and fraudulent. But upon

'examining the record we are not convinced that the board acted in bad faith in making the increase; and, whether the increase did or did not result in an excessive valuation, the defendants failed to appear before the board for the purpose of questioning it. *Petoskey, etc., Gas Co.* v. *City of Petoskey,* 162 Mich. 447 (127 N. W. 345), and cases there cited. And this leads us to the principal question in the case: Were the defendants so misled regarding the action of the board of review in increasing the assessment as to result practically in depriving them of an opportunity to contest such increase before that board?

There was a very lively contest as to the facts in the case. The tax law, as is well understood, provides for two separate and distinct sessions of the board of review. At the first session, to be held on the Tuesday next following the first Monday in June, and to be continued during the next day, if necessary, the board is authorized, of its own motion, or upon cause shown, to correct all error as to valuation upon the assessment roll as submitted to them by the supervisor. And the board is required to enter upon the roll at that time each valuation as fixed and determined by it. 1 Comp. Laws, § 3852, as amended by Act No. 326, Pub. Acts 1907 (1 How. Stat. [2d Ed.] § 1797; 1 Comp. Laws 1915, § 4023). The power of the board to change any valuation upon its own motion ceases at the close of this first meeting. *Auditor General* v. *Sparrow,* 116 Mich. 574 (74 N. W. 881). The second meeting of the board begins on the second Monday in June, and must continue during that and the following day. The object of this second meeting is to correct any assessment upon complaint of the owner of the property and cause shown. 1 Comp. Laws, § 3853, as amended (1 How. Stat. [2d Ed.] § 1798; 1 Comp. Laws 1915, § 4024).

It is claimed on behalf of defendants that their agent called upon the supervisor of the township of Gree-

land in 1911, on one of the days intervening between
the first meeting of the board of review of that town-
ship for that year and its second meeting, and exam-
ined the assessment roll of the township.  The agent
testified at the hearing that there was no entry upon
the roll at that time indicating any change by the board
of review in the assessment as made by the supervisor,
and that he never knew, nor did the owners know, un-
til the time had arrived for the payment of taxes, that
the supervisor's assessment of $20,000 had been in-
creased by the board to $50,000.  The supervisor of the
township for that year also testified at the hearing, and
denied as emphatically that the agent made any exam-
ination of the roll at all.  There was also testimony
tending to show that the change in valuation was made
at the first session of the board, and that it was en-
tered at the time in pencil upon the assessment roll.
There was also testimony that the board of review kept
a record of its proceedings as required by law, al-
though the clerk of the township was unable to pro-
duce or find any such record.  From this conflict of tes-
timony the circuit judge who heard the case found,
as matter of fact, that the agent did examine the as-
sessment roll, and that the increase in valuation had
not been entered therein, but that it had been really
fixed by the board at its first meeting, and entered by
it in the record of its proceedings.  That, at least, is
our understanding of the findings of fact made by the
judge, and we are inclined to believe that they are cor-
rect.  Assuming that both the agent and the super-
visor were giving each the best remembrance he had
of the matter, as, no doubt, he was, it would seem that
the recollection of the agent, who had a definite pur-
pose in examining the roll, and who says there were
definite results from the examination, ought to be more
vivid than that of the supervisor, who was merely
called upon to produce the roll for examination.

This being true, we are directly called upon to determine whether a property owner, after the first meeting of the board of review has been closed and adjourned, may rely upon the fact that the assessment roll shows no change in the valuation of his property, and may therefore remain away from the second meeting of the board if he is satisfied with the supervisor's valuation.

In *Auditor General* v. *Ayer*, 122 Mich. 136 (80 N. W. 997), it was said:

"It is true that there is testimony showing that the entries of the amounts fixed by the board were not made at that time; but the carrying out of the amounts fixed by the board was mere clerical work, and, if the board actually acted upon the question of values at the time fixed, the fact that such values were not carried out in the appropriate column within the time was but an irregularity, which would not make the taxes void."

It was evidently in view of what was said in that case that the circuit judge in the case at bar, after finding that here the board of review had agreed at their first meeting to increase the valuation of the land in question to $50,000, decided that the agent of defendants should not have relied upon the failure of the assessment roll to indicate such increase, but should have gone further, and consulted the records of the proceedings of the board, and that, not having done so, the validity of the increase, and of the taxes levied thereon, cannot now be questioned. But the same thing, in substance, has been said of the record of its proceedings to be kept by the board of review. *Auditor General* v. *Iron Co.*, 132 Mich. 454 (93 N. W. 1080). In the latter case it was shown affirmatively that the owner of the land had not suffered any injury from the failure of the board to keep a record of its proceedings, and in the *Ayer Case* it did not appear that any one had been misled by the failure of the board to enter

its valuations upon the roll. Undoubtedly both cases were rightly decided, because it is provided by section 3922, 1 Comp. Laws (1 How. Stat. [2d Ed.] § 1870; 1 Comp. Laws 1915, § 4098), that:

"No tax assessed upon any property, or sale therefor, shall be held invalid by any court of this State on account of any irregularity in any assessment, or on account of any assessment or tax roll not having been made or proceeding had within the time required by law, or on account of the property having been assessed without the name of the owner, or in the name of any person other than the owner, or on account of any other irregularity, informality, or omission, or want of any matter of form or substance in any proceeding *that does not prejudice the property rights of the person whose property is taxed.*" (Italics are ours.)

It was not held in the *Ayer Case* that the language of the statute, "The board shall pass upon each valuation of each interest, and shall enter the valuation of each, as fixed by it, in a separate column," was immaterial; nor was it indicated that the board of review were not under obligation to obey this statutory requirement. On the contrary, their failure to do so was recognized as an irregularity. But in that case it was an irregularity without injury, because the owner of the land did not consult the roll or rely upon it. In the case at bar the injury was direct and material, if the owners of the land had a right to rely upon the assessment roll, and shape their conduct accordingly.

And why should not a property owner, anxious about his assessment, have the right to rely upon what the assessment roll shows? It is a public record. It is required by law, not only that the valuation fixed by the supervisor shall appear thereon, but also that the board of review, at their first meeting, shall enter therein, in a separate column, the valuations which they have fixed. To enter these valuations, as deter-

mined by the board of review, is a very short and easy matter. The entire situation is then open and clear to the owner of property. At the first meeting of the board they may of their own motion, or in cause shown, add property to the roll and increase or decrease valuations. At their second meeting each property owner may state his objections to the valuations the board have decided upon.. Between these two meetings the statute allows a period of several days in which property owners may examine the roll, consider the valuations made by the board, and determine whether they find anything objectionable in the values arrived at, and, if they do, to prepare their showing for the second meeting. And no reason is apparent why the property owner should be required to consult the records of the board, rather than the assessment roll. It is directed by law that each shall show the valuation of his property, and the one record is of as high a grade as the other. The assessment roll is the more natural and easily accessible source of information. If the agent of the defendants, in the case at bar, examined the assessment roll during the period between the first and second meetings of the board of review,. as it has been found he did, and found no record of an increase in valuation by the board, he had a right to rely upon the information thus obtained, and was not required to appear at the second meeting of the board.

The result was equivalent, in effect, to a denial of opportunity to present, at the second meeting of the board, his objections to the increased valuation; and the assessment stood, as made by the supervisor, at $20,000. The defendants ought to pay the amount of taxes that should have been spread against such valuation, and the decree will be modified accordingly, and, as modified, will be affirmed. If the parties cannot

agree upon the amount of the tax, that amount will be determined at the settlement of the decree.

Decree modified and affirmed.

STONE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred.

This case, having been submitted on briefs, without oral argument, was reassigned after the death of Justice MCALVAY.